# T. J. FAY v. BANKERS SURETY COMPANY.

## ROBERT McGINN v. SAME.

## S. O. PRESTEGAARD v. SAME.[1]

March 20, 1914.

Nos. 18,490, 18489, 18,488—(242, 243, 244).

**Contractor's bond.**

    1. A county ditch contractor's bonds *held* to be valid statutory obligations to the extent of the fair import of the language used in their conditions, but no further.

**Evidence.**

    2. Evidence in actions on such bonds *held* sufficient to connect the items sued for with the ditches covered by the bonds.

**Meaning of "materials."**

    3. Axes, hack-saw blades, horse feed, and provisions, *held* not "materials" furnished in the execution of the contract, within the meaning of the bonds.

**Fuel.**

    4. Items for coal and wood consumed in generating power used in the ditching work, and for labor as cook for the workmen, *held* within the terms of the bonds.

**Assignment of wages.**

    5. The issue of noncompliance with G. S. 1913, § 3858, requiring notice of assignments of wages to be given to the employer, *held* sufficiently raised by defendant's general denial of assignments sued on.

**Act valid.**

    6. This statute sustained, as against a claim that it is unconstitutional as infringing upon freedom to contract and on the ground of class legislation.

[1] Reported in 146 N. W. 359.

Note.—The authorities on the question of the nature of labor or materials which will support an action upon a contractor's bond are collated in a note in 43 L.R.A.(N.S.) 162.

**Double costs.**

> 7. Double costs under G. S. 1913, § 7975, *held* improperly allowed where no claim therefor was made in the complaint, and no proof of the right thereto on the trial.

Three actions in the district court for Pennington county to recover $300, $310.06 and $245.69, respectively, from defendant as surety upon the bond of Jerry Sherwood in favor of the county of Red Lake for the performance of his ditch contract with that county. The answers were general denials. The cases were tried before Grindeland, J., who made findings and ordered judgment in favor of plaintiff for $300, $128.19, $117.25, and interest, respectively. From orders denying its motions for amended findings or a new trial, defendant appealed. Modified.

*McElwee & Payte,* for appellant.

*G. Halvorson,* for respondent.

*Kerr, Fowler, Ware & Furber,* filed a brief as *amici curiæ.*

*Stringer & Seymour* also filed a brief as *amici curiæ.*

PHILIP E. BROWN, J.

On April 4, 1910, one Jerry Sherwood entered into a contract with Red Lake county, wherein he agreed to construct County Ditch No. 38 therein, and to pay, as they became due, all just claims for all work and labor performed and all skill and material furnished in its execution, and to save the county harmless from any cost, charge, or expense which might accrue on account of the doing of the work. On May 14, 1910, the same parties entered into a like contract for the construction of Ditch No. 43 in the same county. Sherwood, as principal, and defendant, as surety, executed bonds to the county in connection with both contracts, in adequate amounts, conditioned, among other things, that he would faithfully pay, "as they [became] due, all just claims for all work and labor performed and all skill and material furnished in the execution of [the] contract." Sherwood thereafter entered upon performance of the work. Plaintiffs, directly in their own behalf and claiming also as assignees of others, brought these three separate actions, seeking to recover the value of labor,

materials, etc., alleged to have been performed and furnished in construction of the ditches. Defendants denied liability, the causes were separately tried to the court, findings made, and judgments ordered for plaintiffs. In the McGinn case the court awarded a recovery for two axes, $2.40, two dozen saw-hack blades, $1.80, and coal, $6.18; also $56.06 for horse feed, provisions, and labor furnished and performed by one Rime, alleged to have been assigned to plaintiff. In the Prestegaard case the court gave plaintiff judgment for $20, for wood furnished by one Iverson, the claim for which being alleged to have been assigned to plaintiff. In the Fay case $224 was allowed for labor performed by plaintiff. Defendant appealed from orders denying its motions for amended findings and new trials.

1. The first question requiring consideration relates to the allowance for tools and coal in the McGinn case. G. S. 1913, § 5536, provides that bonds in cases like the present shall be taken for the use of all persons who may show themselves aggrieved or injured by any breach thereof or of the contract for which the bond is given, while section 5537 states that every ditch contract and bond shall embrace "all the provisions provided by law for the giving of bond by contractors for public works and improvements and for the better security of the contracting county or counties and of the parties performing labor and furnishing material in and about the performance of such contracts." Bonds by contractors for public works and improvements are required by section 8245, the material portions of which being:

"No contract with the state, or with any municipal corporation or other public board or body thereof, for the doing of any public work, shall be valid for any purpose, unless the contractor shall give bond to the state or other body contracted with, for the use of the obligee and of all persons doing work or furnishing skill, tools, machinery, or materials under, or for the purpose of, such contract, conditioned for the payment, as they become due, of all just claims for such work, tools, machinery, skill and materials, for the completion of the contract in accordance with its terms, for saving the obligee harmless from all costs and charges that may accrue on ac-

count of the doing of the work specified, and for compliance with the laws appertaining thereto."

In Wilcox Lumber Co. v. School District No. 268 of Otter Tail County, 103 Minn. 43, 45, 114 N. W. 262, 263, it was declared:

"The purpose of this statute was the protection of laborers and materialmen performing labor or furnishing material for the execution of a public work to which the mechanic's lien statute does not apply. The bond * * * stands as security for the payment of all obligations incurred by the contractor in the prosecution of the work, and the general rules and principles of the law of suretyship apply to and govern the rights of the parties."

The same principle is restated in State v. Clark, 116 Minn. 500, 502, 134 N. W. 130, 39 L.R.A.(N.S.) 43. And while the rule of strict construction in favor of the surety does not apply to a surety company (Allen v. Eneroth, 118 Minn. 476, 479, 137 N. W. 16), the surety is bound in the manner and to the extent of his obligation and no further; but the bond, being given by virtue of statute, cannot be severed therefrom, and the parties are deemed to have contracted with reference thereto. Such an instrument "must be construed in the light of the statute, and extended, as well as limited in its scope, to those cases contemplated by the statute, unless violence would be done to the language of the bond by such construction." Fairmont Cement Stone Mnfg. Co. v. Davison, 122 Minn. 504, 509, 142 N. W. 899; Combs v. Jackson, 69 Minn. 336, 337, 72 N. W. 565. See also Union Sewer Pipe Co. v. Olson, 82 Minn. 187, 84 N. W. 756; Waterous Engine Works Co. v. Village of Clinton, 110 Minn. 267, 125 N. W. 269; Scott-Graff Lumber Co. v. Independent School District No. 1, 112 Minn. 474, 128 N. W. 672.

Although the bonds are not conditioned in terms in accordance with our present statute, but follow chapter 321, p. 535, Laws 1901, with these principles as guides, we are led to the conclusion that the bonds are valid as statutory obligations to the extent of the fair import of the language used in the conditions. Their effect cannot, however, be extended further. See Union Sewer Pipe Co. v. Olson, 82 Minn. 189, 84 N. W. 956.

While the proofs connecting the items mentioned with either of

the ditches is unsatisfactory, we deem it sufficient when the general manner in which these cases were presented to the court below is considered. But, aside from the coal, clearly none of them can be held "materials" within the meaning of the bond. Beals v. Fidelity & Deposit Co. 76 App. Div. 526, 527, 78 N. Y. Supp. 584, and cases cited, affirmed in 178 N. Y. 581, 70 N. E. 1095; Empire State Surety Co. v. Des Moines, 152 Iowa, 531, 548, 131 N. W. 870, 132 N. W. 837. Whether the coal, consumed in the performance of the contract, should be considered "material furnished in its execution," is a question upon which the authorities are at variance. See Zipp v. Fidelity & Deposit Co. 73 App. Div. 20, 76 N. Y. Supp. 386; City Trust, Safe Deposit & Surety Co. v. U. S. 147 Fed. 155, 77 C. C. A. 397; National Surety Co. v. Bratnober Lumber Co. 67 Wash. 601, 122 Pac. 337; City of Alpena v. Title Guaranty & Surety Co. 168 Mich. 350, 134 N. W. 23; City of Philadelphia v. Malone, 214 Pa. St. 90, 63 Atl. 539; George H. Sampson Co. v. Com. 202 Mass. 326, 88 N. E. 911. With us, however, the lien laws, for which the statutes now under consideration are largely substituted, have always been given a broad and liberal construction, and no reason is perceived why such should not be applied here. Materials ordinarily required in performance of the work may properly be assumed to have been within the contemplation of the parties when the bond was executed. Power must usually be generated in ditching, and we think liability should not be restricted to items actually entering into the completed structure. It is sufficient if the materials be reasonably incident to the performance of the particular contract. Any other rule would exclude forms for concrete or lumber required for a temporary dam, without regard to the necessity of either, and other materials of like nature. We hold the item for coal was properly allowed.

The allowance for horse feed, provisions, etc., cannot be sustained. These cannot be deemed materials furnished in the execution of the contract, but are, at most, collateral to performance. As suggested in McKinnon v. Red River Lumber Co. 119 Minn. 479, 484, 138 N. W. 781, 42 L.R.A.(N.S.) 872, they cannot be differentiated from

grocer's or butcher's supplies or clothing for the workmen, or, we may add, their traveling or hotel expenses.

2. What has been said concerning the claim for coal, disposes of the wood item in the Prestegaard case adversely to appellant's contention.

We discover no ground for disturbing the court's conclusion in allowing plaintiff's personal claim for labor in the Fay case.

3. In all the cases the court sustained claims for labor performed by persons other than plaintiffs, alleged to have been assigned to the latter. The only traverse of the assignments was by general denial. It appeared that subsequently to performance of the labor Sherwood died, but whether prior or subsequently to the making of the assignments was not disclosed. G. S. 1913, § 3858, provides:

"No assignment, sale or transfer, however made or attempted to be made, of any wages or salary, earned or to be earned, shall give any right of action, either at law or in equity, to the assignee or transferee of such wages or salary, nor shall any action lie for the recovery of such wages or salary, or any part thereof, by any other person than the person to whom such wages or salary are due or to become due, unless a written notice, together with a true and complete copy of the instrument, assigning or transferring such wages or salary, shall have been given within three days after the making of such instrument to the person, firm or corporation from whom such wages or salary have accrued or are accruing, or may accrue."

Plaintiffs' contention, that noncompliance with the statute should have been specially pleaded by defendant cannot be sustained. They alleged an assignment generally, and bore the burden of establishing a valid transfer, and defendant's general denial sufficiently raised the issue. 2 Dunnell, Minn. Dig. § 7574.

Plaintiffs claim, however, that the statute is unconstitutional as infringing upon freedom to contract and on the further ground of class legislation. Speaking generally there would seem to be little doubt concerning the power of the legislature to regulate assignments of choses in action, which were not assignable at common law, though the rule was otherwise in equity. Certainly the general legislative power has always existed at least to attach reasonable condi-

tions. Like objections to analogous statutes have recently been considered by some of the ablest state courts of this country, and also by the Supreme Court of the United States. In International Text Book Co. v. Weissinger, 160 Ind. 349, 65 N. E. 521, 65 L.R.A. 599, 98 Am. St. 334, it was held that the police power was ample to prohibit employees from assigning future wages. The supreme court of Massachusetts, in Mutual Loan Co. v. Martell, 200 Mass. 482, 86 N. E. 916, 43 L.R.A.(N.S.) 746, 128 Am. St. 446, decided that the constitutional right to contract was in no wise infringed by requiring assignments of future wages to secure small loans, to be accepted by employers in writing, consented to by the wives of the assignors, and recorded, in order to be enforceable. Subsequently that case was affirmed in 222 U. S. 225, 32 Sup. Ct. 74, 56 L. ed. 175, Ann. Cas. 1913B, 529. While neither of the courts last mentioned sustain a total prohibition of assignments of wages, the latter affirms the holding of the former, and also, as likewise the Massachusetts and Indiana cases, sustains the legislation as against the claim of improper classification. In Massie v. Cessna, 239 Ill. 352, 88 N. E. 152, 28 L.R.A.(N.S.) 1108, 130 Am. St. 234, a different view was taken concerning restrictions upon assignments of salaries. New York, however, approves and follows the decisions in Mutual Loan Co. v. Martell, supra, and the conclusion reached is that its "statute is a reasonable exercise of the police power vested in the legislature and tends to preserve the public welfare and the particular welfare of both the employer and the employee." See Thompson v. Erie R. Co. 207 N. Y. 171, 177, 100 N. E. 791. While the statutes so construed differ from the one under consideration, no distinction in principle is involved. We consider the reasoning of the cases upholding the New York and Massachusetts statutes conclusive as to the constitutionality of ours and sustain it. Since, therefore, no compliance or attempted compliance with it was pleaded or proved, none of the assigned claims for wages can be allowed. Whether the statute would apply where an assignment is executed subsequently to the death of the employer, is doubtful, but we do not now determine the question.

4. The claim of Cora Signan for labor, if performed, as cook for

the men engaged in constructing the ditch, is within the terms of the bond, under the ruling of Breault v. Archambault, 64 Minn. 420, 67 N. W. 348, 58 Am. St. 545.

5. The court allowed double costs, under G. S. 1913, § 7975, without claim therefor in the complaints or proof of the right thereto on the trials. This was error. Before such award can be made it must appear that payment was demanded at least 30 days before action. If plaintiffs claimed double costs they should have made the grounds thereof an issue on the trial. It is only in cases within the statute that such award can be made, and defendant has the same right to contest a claim therefor as any other issue.

No reason exists why new trials should be had on any of the claims we have held properly allowed by the court or where we have modified such allowances. As to the former the orders are affirmed, and also as to the latter to the extent stated in this opinion, but with single costs only. As to all other claims new trials are granted. No statutory costs will be allowed in this court.