# ALBERT A. JOHNSON v. LEWIS H. STARRETT and Others.[1]

October 9, 1914.

Nos. 18,771—(246).

**Mechanic's lien.**
    1. Coal and gasolene for generation of power, dynamite for blasting, lubricant, lighting materials and supplies, and materials for erection of a tool-house, furnished excavating contractors, *held* lienable under G. S. 1913, § 7020, as being contributions to the improvement of defendant's realty. Supplies for and repairs and parts of the excavating machinery, *held* not lienable, being merely contributions to the personal property of the contractors.

**Same.**
    2. Materials furnished in good faith for the improvement of realty may be lienable though not actually used in the work.

Action in the district court for Hennepin county against Lewis H. Starrett and Abraham L. Cornman, doing business as Starrett & Cornman, and Hennepin Avenue Methodist Episcopal Church, to foreclose a lien for $451.12 for materials furnished defendant corporation and by a sale of the premises therefor. The Schurmeier Wagon Co. and others intervened. The case was tried before Hale, J., who denied the motion of defendant church for the dismissal of the intervener's claims, and made findings and ordered judgment in favor of plaintiff and the several interveners, granting each of them a lien and directing a sale of the property to pay the same. From an order denying the motion of defendant Hennepin Avenue Methodist Episcopal Church for the vacation of the findings and the substitution of others in their stead, or for a new trial, defendant Hen-

[1] Reported in 149 N. W. 6.

Note.—Right to mechanics' lien for explosives furnished contractor, see note in 2 L.R.A. (N.S.) 288.

Lien for materials furnished for structure, but not actually used, see note in 31 L.R.A. (N.S.) 749.

nepin Avenue Methodist Episcopal Church appealed. Affirmed as to one intervener. Reversed with directions as to the other interveners.

L. K. Eaton and Willard R. Cray, for appellant.

George W. Hanson, Norton M. Cross, W. W. Todd, James C. Melville and H. C. Mackall, for respondents.

PHILIP E. BROWN, J.

The trial court held that plaintiff and the interveners were all entitled to liens on defendant's realty for materials furnished, for the full amounts claimed. Defendant appealed from an order denying a new trial. The undisputed facts are:

Defendant, being the owner of a lot in Minneapolis, contracted on December 4, 1912, with Starrett & Cornman, for its excavation by them for the purpose of erecting a church. The terms of the contract do not appear. Between that date and March 5, 1913, the contractors were engaged in doing the excavating. The work was done with a portable steam-power excavating machine known as a whirly, which was owned by the contractors and operated day and night. The earth, as excavated and lifted by the machine, was loaded upon motor trucks and carried away. Plaintiff furnished the contractors the coal used in generating the steam-power for the whirly, and intervener Manhattan Oil & Linseed Co. sold the gasolene used in the motor trucks; both of these fuels being sold to the contractors for the purposes stated and delivered on the premises. Intervener Gardner Hardware Co. sold them materials of the value and for the purposes next stated, namely, $9.81, for lumber used in building an office or toolhouse on defendant's premises; materials and supplies used in connection with the light plant of the machine, $19.25; dynamite, $173.50; supplies and repairs for and parts of the power engine, $119.51; materials for the dump platform of the whirly, $6.99; and supplies, materials, and parts of the machine, $89.46. Intervener Schurmeier Wagon Co. furnished the contractors forgings, iron work, and labor in repairing the machine, of the value of $94.57. Intervener W. K. Morrison & Co. furnished them materials for the like purpose, to the amount of $42.56, and also $3 worth of rope grease to be used in lubricating the pulleys. After the excava-

tion was completed the machine, with its appurtenances, was removed from the premises. One-half the ground excavated consisted of clay, which the contractors were unable advantageously to blast or remove with shovel and pick, and which was more economically removable by use of the machine.

The sole question involved is: Were the several items mentioned lienable? Defendant, relying largely on decisions from other jurisdictions, insists upon a negative answer as to all. Upon the questions involved, however, foreign decisions, while instructive, are not of their usual weight; for, aside from the fact that this court has already determined some of the questions decided, the statutes considered are not alike and the rules of statutory construction and policy affecting the foundation of the determinations in some of the cases are at variance with our holdings. The opinions in Indiana, Massachusetts, Pennsylvania, and California, are notable in these regards. The Indiana statute is not given a liberal construction as being remedial. Cincinnati, R. & M. v. Shera, 36 Ind. App. 315, 73 N. E. 293. The Pennsylvania court regards mechanic's lien laws as class legislation, the scope of which should not be unnecessarily enlarged by too liberal construction. Oppenheimer v. Morrell, 118 Pa. St. 189, 12 Atl. 307. Massachusetts and California, and also Pennsylvania, seem to be committed to the doctrine that liens cannot be allowed for materials incidentally promoting the construction of buildings, but only for such as enter into the construction and become a part of the structure. For example, their courts exclude forms for holding concrete in place during process of building and temporary scaffolding. But Massachusetts nevertheless awards a lien for gunpowder used in building an aqueduct. Geo. H. Sampson Co. v. Com. 202 Mass. 326, 86 N. E. 911. And California reaches the same conclusion regarding oil furnished for and applied on the threads of joints of pipe used in the structure, and also for soapstone used as a lubricant in order to facilitate the pulling of electric wires through the pipes in the building, both of which obviously do not remain as a part of the permanent structure. Pacific Sash & Door Co. v. Dumiller, 162 Cal. 664, 124 Pac. 230. California, likewise, in accord with the great weight of authority (note, 2 L.R.A.[N.S.]

288), holds explosives lienable. California Powder Works v. Blue Tent, Consol. Hydraulic Gold Mines, 22 Pac. 391, 3 Cal. Un. Cas. 145; Giant Powder Co. v. San Diego Flume Co. 78 Cal. 193, 20 Pac. 419. Wisconsin, adhering to the doctrine of liberal construction, holds that materials used directly upon the work or structure and instrumental in producing the final result, are lienable if actually consumed in the use, though not physically incorporated therein, but apparently excludes coal used in portable engines, and oil used in lubricating building machinery. Barker & Stewart Lumber Co. v. Marathon Paper Mills Co. 146 Wis. 12, 130 N. W. 866. On the other hand, in New York, Tennessee, Kentucky, Missouri and Kansas, a much more liberal view is taken. See Schaghticoke Powder Co. v. Greenwich & J. Ry. Co. 183 N. Y. 306, 7 N. E. 153, 2 L.R.A.(N.S.) 288, 111 Am. St. 751, 5 Ann. Cas. 443, 73 App. Div. 20; Zipp v. Fidelity & Deposit Co. 76 N. Y. Supp. 386; Hercules Powder Co. v. Knoxville, L. F. & J. R. Co. 113 Tenn. 382, 83 S. W. 354, 67 L.R.A. 487, 106 Am. St. 836; Avery v. Woodruff, 144 Ky. 227, 137 S. W. 1088, 36 L.R.A.(N.S.) 866; Darlington Lumber Co. v. Wesley Construction Co. 161 Mo. App. 723, 141 S. W. 931; Chicago Lumber Co. v. Douglas, 89 Kan. 308, 131 Pac. 563, 44 L.R.A.(N.S.) 843. See also City Trust Safe Deposit & Surety Co. v. U. S. 147 Fed. 155, 77 C. C. A. 397. Many other cases to like effect might be added.

Our policy as to and construction of lien laws is well expressed in Emery v. Hertig, 60 Minn. 54, 57, 61 N. W. 830, 831, wherein it is said:

"It is sufficient for us to say that, whatever may be the conflicting decisions of other tribunals, we are of the opinion that no narrow or limited construction of our mechanic's lien law should be indulged in by the courts, and that the labor and industry of the country should not be hampered by technicalities or harsh interpretations of what was evidently intended to be a just law for the benefit of our industrial pursuits, which tends so materially to the building of cities and towns, and is the embodiment of so much natural justice. He whose property is enhanced in value by the labor and toil of others should be made to respond in some way by payment and full satis-

faction for what he has secured. To accomplish this result is the intent of the lien law."

These statutes must also have a reasonable and practical construction. Howes v. Reliance Wire-Works Co. 46 Minn. 44, 48 N. W. 448; Lindquist v. Young, 119 Minn. 219, 138 N. W. 28. Both the language quoted and the cases last cited accord with the report of the commission of statutory revision in New York, wherein it is said:

"The underlying principle of all legislation of this character is that a person who, at the request or with the consent of the owner of real property, enhances its value by furnishing materials or performing labor for the improvement thereof, should be deemed to have acquired an interest in such property to the extent of the value of such materials or labor. This principle should be applicable generally to improvements of real property." Schaghticoke Powder Co. case, supra, 183 N. Y. 310, 312, 76 N. E. 154, 155, 2 L.R.A.(N.S.) 288, 111 Am. St. 751, 5 Ann. Cas. 443.

In the same decision it is said:

"It is a familiar rule that in the construction of statutes their language must be adapted to changing conditions brought about by improved methods and the progress of the inventive arts."

Our statute reads:

"Whoever contributes to the improvement of real estate by performing labor, or furnishing skill, material, or machinery, for any of the purposes hereinafter stated * * * shall have a lien * * * for the price or value of such contribution * * * upon the land * * * ; that is to say for the erection * * * of any building, * * * thereon or for * * * excavating the same." G. S. 1913, § 7020.

From a practical standpoint we think it cannot be justly said, under the plain terms of the statute, that those furnishing the coal, gasolene and dynamite did not "contribute to the improvement" of defendant's property by "furnishing material for excavating the same." Clearly the work of the whirly and motor trucks contributed to the improvement of defendant's property, and, as the coal and gasolene furnished the motive power for its accomplishment, the contractors would have been entitled to a lien therefor. But it is

said that these materials were not furnished to excavate defendant's premises or for them, but, on the contrary, for use in and as a part of the plant and equipment of the contractors for the purpose of creating power and therefore were not lienable. This contention, we think, is too restricted both as to the facts and law. It ignores both the policy and settled construction of the statute and also modern methods employed in performing building contracts. Both the coal and gasolene were materials and both were components of the resultant achievement. Had the excavation and removal of the earth been done by manual labor, the right to a lien therefor would be undoubted, and we cannot differentiate such a case from one where the same result is reached by other and modern methods. The value of defendant's property was thereby enhanced, and it can make no difference that this was accomplished by use of power obtained from materials furnished by the lien claimants instead of by common labor. See Fay v. Bankers' Surety Co. 125 Minn. 211, 146 N. W. 359. Had the improvement necessitated the pumping of water, the strained construction and refined reasoning necessary to exclude a lien for fuel used in generation of power for the pump would, perhaps, be more apparent. The rule as to explosives should be applied to the items for coal and gasolene, and the trial court's determination as to them is sustained, as is also, by a parity of reasoning, its disposition of the claims for dynamite, rope grease, and materials and supplies for the light plant. The fact that it does not appear that the dynamite was actually used is unimportant, for materials furnished in good faith for a particular improvement are lienable, though not used. See authorities cited in note 10 of the statute quoted. The claim for the tool-house materials was likewise properly allowed. Lindquist v. Young, supra, 222, 138 N. W. 28. The other items, we hold, were not lienable. All were for supplies for, or repairs and parts of, the excavating machinery and engine, which were mere tools used in the work. These did not contribute to the improvement of defendant's realty, but to the personal property of the contractors. Furthermore, from aught that appears, they survived the performance of the work and remained the property of the contractors. They were not essentially different from repairs for tools requisite for an

ordinary workman's labor on the job. Rosman v. Bankers Surety Co. 126 Minn. 435, 148 N. W. 454, is not in point.

Order affirmed as to plaintiff and intervener Manhattan Oil & Linseed Co., reversed as to the other interveners, with directions to the trial court to amend its conclusions of law so as to disallow the Schurmeier Wagon Co.'s claim of lien, and to reduce intervener W. K. Morrison & Co.'s lien to $3, and that of intervener Gardner Hardware Co. to $202.56.