# EMIL MILLER v. AMERICAN BONDING COMPANY OF BALTIMORE.[1]

June 23; 1916.

Nos. 19,804—(160).

**State rural highway — construction of statutory bond — tools and ma-chinery used.**

1. The bond required to be given by the one to whom is let the con-struction of a state rural highway, and conditioned as provided by G. S. 1913, § 8245, secures the payment of labor, skill and material furnished in repairs upon tools and machinery employed in the construction of the highway, and also for the reasonable value or agreed price of the use of appropriate tools and machinery furnished during and in the construction; but it does not secure payment of the purchase price of tools or machinery sold to the contractor and which become a part of his equipment, although the same are sold for the particular con-tract and are necessary and appropriate for that purpose.

**Judgment affirmed.**

2. The judgments dismissing the intervening plaintiffs' claim against the surety on a bond, of the kind mentioned, for the purchase price of tools and machinery sold to the contractors for the construction of state rural highways are right and are affirmed.

**Demurrers to complaint.**

3. The order sustaining the demurrer to the sixteenth and twenty-seventh causes of action stated in the complaint is also affirmed, but the order sustaining the demurrer to the sixth, seventh, eight, twelfth, thirteenth, fifteenth, nineteenth and twenty-first causes of action therein stated is reversed, each of said causes of action containing items of labor, skill or material furnished in needed repair to the contractors' equipment while employed in the construction.

[1]Reported in 158 N. W. 432.

---

Note.—For authorities passing on the question of nature of labor and material which will support an action upon a contractor's bond, see notes in 43 L.R.A.(N.S.) 162, L.R.A. 1915F, 951.

As to applicability to public bodies of statute requiring building contractor's bond for protection of subcontractors, laborers, etc., see note in 50 L.R.A.(N.S.) 469.

Action in the district court for Winona county to recover $5,391.52 upon defendant's bond as surety for Prinz & Carlson for the performance of their contract with the county of Winona for the construction of State Rural Highway No. 2. Defendant's demurrers to the second, third, seventeenth, twenty-third, twenty-sixth and thirty-first causes of action were overruled and the demurrers to the sixth, seventh, eighth, twelfth, thirteenth, fifteenth, sixteenth, nineteenth, twenty-first and twenty-seventh were sustained, Snow, J. Crane & Ordway Company and W. J. Landon and F. C. Landon, partners under the firm name of R. D. Cone Company were allowed to intervene and file their complaints. The case was tried before Snow, J., and thereafter because of his illness and death was submitted upon a transcript of the evidence to Granger, J., who made findings and disallowed the claims of the interveners. From the order sustaining the demurrers to the sixth, seventh, eighth, twelfth, thirteenth, fifteenth, sixteenth, nineteenth, twenty-first and twenty-seventh causes of action, plaintiff appealed. From the judgment dismissing its intervening complaint, Crane & Ordway Company and W. J. Landon and F. C. Landon took separate appeals. Order in reference to the demurrer sustained in part, reversed in part. Judgment affirmed.

*Webber & Lees* and *J. M. George,* for appellants.

*Keith, Kingman, Cross & Wallace,* for respondent.

*Chester L. Caldwell, amicus curiae,* filed a brief in behalf of interveners.

HOLT, J.

On the twelfth of August, 1912, separate contracts were let by the county of Winona for the construction of two concrete state rural highways under the Elwell law to the partnership of Prinz & Carlson, and the defendant bonding company gave the statutory bonds. The contractors entered upon the work, but abandoned it in the fall of 1913, leaving unpaid a number of claims for labor, materials, tools and machinery procured in the performance of the work by themselves and subcontractors. Many of these claims were assigned to plaintiff, who herein seeks to enforce them against the bonding company. Crane & Ordway Company and R. D. Cone Company were permitted to become intervening plaintiffs, each setting up a cause of action for instrumentalities sold the contrac-

tors to be used, and which were used in the construction of the roads. A demurrer was sustained to several of plaintiff's claims, and, after a trial, the intervening plaintiffs were denied a recovery. The actions of the courts below—the sustaining of the demurrer by the late Judge Snow and the rejection of the claims of the two intervening plaintiffs by Judge Granger—now come up for review.

The Elwell Law (c. 254, p. 352, Laws 1911), requires the contractor's bond to be conditioned as provided by chapter 230, p. 303, Laws 1905, in drainage proceedings, and in section 15 of the latter is found this requirement: "Every such contract shall embrace all the provisions provided by law for the giving of bond by contractors for public works and improvements," etc. thus making applicable G. S. 1913, § 8245. The bond here involved is conditioned that Prinz & Carlson "shall pay, as they become due, all just claims for all work and labor performed and all tools, machinery, skill and materials furnished under, or for the purpose of, or in the execution of" the contract. This is in substantial conformity to said section 8245.

The two claims disallowed by Judge Granger, and many items in the different causes of action to which Judge Snow sustained the demurrer, depend upon the bonding company's liability for the purchase price of tools and machinery sold to the contractors or subcontractors as proper equipment for the building of the highways.

As to the claims of Crane & Ordway Company the findings are, in substance, that at the request of the contractors the company in September, 1912, sold and delivered to them iron pipes, tees, plugs, hose nipples, clamps and hose of the reasonable value of $729 to be used and which were used by them in conveying water to the concrete mixer used in the construction of the highways. That the materials were not manufactured by the seller expressly for this purpose, but were ordinary materials carried in stock. As to the claim of the partnership of R. D. Cone Company, the court found that it sold and delivered 12 dump wagons to be used in hauling material for the construction of the highways, and they were so used. The balance unpaid on the wagons is $861.05. Both the piping and the wagons were found to have become a part of the general equipment of the contractors.

The contention of appellants is, that, under the plain reading of the

law, one who furnishes tools or machinery for a public improvement may resort to the contractor's bond for the payment of their market or agreed price. It is argued that, although it might be possible to give an interpretation to the statute so as to confine claims for machinery against a contractor's bond to machines incorporated into or becoming a part of the works or improvement, the same may not be done in respect to tools which never can become a component part of a work or improvement—tools might here include both the piping and wagons without being unduly liberal in the interpretation of a statute designed to be remedial. It must be conceded that so far as the rights of a vendor of a tool to have recourse to a bond of this sort for its purchase price, use or repair, it must be the same as the rights of a vendor of machinery.

A proper construction of the statutes here applicable is not free from difficulty. Chapter 354, p. 757, Laws 1895, was the first law exacting a bond from contractors upon public works and improvements to better secure the state, the public corporations and the parties performing labor and furnishing materials for such works or improvements. The first section, standing alone, might have covered labor performed and skill and material furnished in the execution of the contract to the same extent as under the mechanic's lien statute. The fourth section, however, provides: "Whoever shall perform or cause to be performed any work or labor or furnish or cause to be furnished any skill or material including any work, labor, skill or material necessary in the repair of any tool or machine and including the use of any tool or machine or material furnished particularly for such contract and used therefor in the execution or [of] such contract at the request of the contractor * * * shall be considered a party in interest in said bond and may bring an action thereon for the reasonable value or agreed price as the case may be, of the work or labor performed or skill or material or tool or machine furnished in the performance of such contract." Section 4 applied, amplified and extended section 1 so that recourse might be had to the bond for work or material performed or furnished in the repair of any tool or machine, and for the use of any tool or machine furnished particularly for the contract. "The reasonable value or agreed price" therein mentioned must mean the reasonable value or agreed price for the repair or for the use, as the case may be, and not for the purchase of the tool or machine. These two

sections were combined in the revision of 1905, (R. L. 1905, § 4535), and by the amendment of 1909 a proviso, of no bearing here, was added, so that the law upon the subject is now found in G. S. 1913, § 8245. A reasonable effect and meaning must be given to the words "tools" and "machinery" in the law as it now is. They should not be eliminated. Since the main purpose of the revision of 1905 was to rearrange and condense and not to abrogate or alter the meaning of existing laws, we may with propriety look to the original form of a statute for light in cases where the revision, in the effort to make the code terse and compact, has left the meaning somewhat obscured. It seems quite clear that the law, as it existed just prior to the taking effect of Revised Laws 1905, did not give a cause of action on the contractor's bond for the purchase price of a tool or a machine sold to the contractor to be used in a public work or improvement. But it was given for the repair of a tool or machine, and for the value of the use in case the contractor rents it for the job. Where the work is of such character that the use of extensive and costly machines are required, it is reasonable to consider that the wear and tear of these machines is a necessary contribution to the work, or, in other words, the reasonable value of the use of the machines contributes as much to the construction in hand as does the reasonable value of the manual labor expended thereon. So also, in the performance of every improvement or work of any magnitude, the tools become dulled and out of repair, and the machines used thereon break or wear out parts; and, in order to proceed efficiently with the work, these matters must be attended to and require labor, skill and material. In a work like this, if the cement mixer should break and the contractor had in his employ a workman capable of making the repair, and who so did, no doubt such workman could resort to the bond for his payment, as readily as if he sought to recover for the value of his work in mixing the concrete that actually went into the work. And why should not an outsider, called in to do the same necessary repairing, stand in as good position? A proper interpretation of the statute in the light of its history, its present wording, and a reasonable consideration of its purpose, is that, for repair of the tools and machinery needed in public works and for reasonable value or agreed price of the use of any tools or machinery furnished for and necessary in the construction, there is liability on the bond. But the statute as it originally stood did

not warrant an interpretation that those who might sell the contractor appropriate tools and machines for use in the construction of a public work or improvement could look to the bond for the purchase price. Nor do we think the present statute was intended to serve that purpose. It would lead to unjust and absurd results. The instant case is an illustration. Here, the contractors were engaged, almost simultaneously, upon four separate road contracts, in each of which the pipes and wagons were appropriate tools and machines. Suppose there had been different bondsmen for each contract, it would certainly be unjust and unreasonable to hold the bondsmen on one contract liable for the whole purchase price of the tools or machines, even though the same had been less worn or depreciated on that contract than on any of the others. The purchase price of the tool or machine does not in any proper manner measure the seller's contribution to the work of the contract, but insofar as it is furnished to be used in the work and therein is broken or depreciated, there can properly be said to be a contribution to the work under construction, thus affording a reasonable basis for legislation charging liability against the contractor's bond. .

No doubt both the piping and the wagons, sold to the contractors in this case by the intervening plaintiffs, may well come within the designation of "tools" and "machinery." It should also be conceded that both were needed, and were appropriate for the construction of the roads. But nevertheless, our conclusion is, that the contractors' bondsman is not liable for the purchase price thereof. The construction of public works and improvements, as a rule, requires an extensive equipment of tools and machinery. This equipment may last for years and be used in the performance of any number of undertakings, public and private. It is unbelievable that the legislature intended that the bond under G. S. 1913, § 8245, should secure the purchase price of a contractor's equipment.

Fay v. Bankers Surety Co. 125 Minn. 211, 146 N. W. 559, Ann. Cas. 1915C, 688, cannot control here, for there the bond sued on was not conditioned as this—the words "tools" or "machinery" were omitted, and the court held that the tools there furnished were not "materials" within the meaning of the bond. Although the parties there intended to give the statutory bond, all the terms called for by the statute were not inserted, and it was held, on the authority of Union Sewer Pipe Co. v. Olson, 82

Minn. 187, 189, 84 N. W. 756, that liability could not be extended beyond the language of the bond. See also Fairmont Cement Stone Mnfg. Co. v. Davison, 122 Minn. 504, 142 N. W. 899, Ann. Cas. 1914D, 945.

Neither does Johnson v. Starrett, 127 Minn. 138, 149 N. W. 6, L.R.A. 1915B, 708, support respondent's contention that there is no liability for the repairs involved in some of the causes of action to which the demurrer was sustained, for the mechanic's lien law under which the claims there were asserted does not purport to give a lien for repairs upon tools or machines. There is some analogy between the right to a mechanic's lien and the right to have recourse to a bond, such as here in suit, but not as to repairs upon the tools or machines, for, on that point, the statutes are radically different.

The case of Rosman v. Bankers Surety Co. 126 Minn. 435, 148 N. W. 454, involving the same bond as the Fay case, held a recovery proper for dismantling, moving, setting up and placing in proper condition the dredge used in digging the ditch. This tends to show that the demurrer to some of plaintiff's causes of action ought not to have been sustained. On the other hand, the case also discountenances the claim that a recovery may be had on the contractor's bond for the purchase price of a tool or machine sold for use in the construction of public works or improvements.

Under the interpretation we place upon this bond and section 8245, G. S. 1913, we think the complaint as to the sixth, seventh, eighth, twelfth, thirteenth, fifteenth, nineteenth and twenty-first causes of action shows that there are some items in each of said causes for which recovery may be had against the bonding company, in that such items are for repairs or putting the necessary tools and machinery in condition to do the work required. We need not now single out items in each cause. We may say, for example, in the nineteenth cause a sale is averred of tools, machinery, supplies and *materials,* and tarred paper is one of the items. This clearly is one of the items covered by the bond, if the proof showed its necessary use in the construction of the road. The sixteenth cause of action was properly held demurrable, for the allegations are confined to a sale of appliances and harnesses and not to repair thereof. It is stated in the record that an itemized bill attached to the complaint set forth some items for repairs, but the bill cannot supply the defect in the allegations of the pleading. We fail to find anything in the return in respect to the

twenty-seventh cause of action, although it is included in the notice of appeal. Nor do we find any error assigned upon the court's action in sustaining the demurrer thereon.

The order sustaining the demurrer to the sixth, seventh, eighth, twelfth, thirteenth, fifteenth, nineteenth and twenty-first causes of action is reversed and affirmed as to the sixteenth and twenty-seventh causes of action. And the judgments against the intervening plaintiffs Crane & Ordway Company and R. D. Cone Company are affirmed.