## GEORGE A. CLIFTON AND ANOTHER v. EMIL NORDEN AND ANOTHER.[1]

October 11, 1929.

Nos. 27,252, 27,253.

*L. A. Wilson,* for plaintiff-appellants.

*Doherty, Rumble, Bunn & Butler,* for defendant-appellant.

[1]Reported in 226 N. W. 940.

STONE, J.

In this action upon a public contractor's bond there was a verdict for plaintiffs. Defendant Norden was the contractor and does not appeal. The surety, defendant National Surety Company, appeals from an order denying its alternative motion for judgment notwithstanding or a new trial. Plaintiffs, having moved for an order for judgment notwithstanding for a larger amount than that allowed them by the verdict, or in the alternative for a new trial, also appeal from the order denying that motion.

Plaintiffs sue for the value of labor and materials used in the repair of motor trucks belonging to subcontractors which were employed by defendant Norden in the execution of a highway contract. The amount claimed is the cost for both labor and materials of installing a new main bearing, pistons, drive shaft, universal joints, cylinder blocks complete with pistons and rings, an oil gauge, main switch, springs, connecting rod, batteries and tires. The repairs were made during the course of the work, and there is no proof that any of the new parts were worn out on the job. The charge to the jury was that "the bonding company is only chargeable for the value of the repair, or for the work that they put into those things, where it is not greater than the reasonable value of the use of the article was upon the contract." This instruction prevented plaintiffs' getting the entire sum for which they sued and is assigned as error on plaintiffs' appeal. They ask judgment for the total cost of the repairs. It is argued for defendant surety that none of the items are within the coverage of its bond. The bond, as required by G. S. 1923 (2 Mason, 1927) § 9700, is "for the use of the obligee [the county of Mahnomen] and of all persons doing work or furnishing skill, tools, machinery, or materials or insurance premiums or equipment or supplies for any camp maintained for the feeding or keeping of men and animals engaged under, or for the purpose of, such contract," and is conditioned for the payment "of all just claims for such work, tools, machinery, skill, materials, insurance premiums equipment and supplies, for the completion of the contract in accordance with its terms." So the question is one of statutory construction. Were the labor and new parts furnished

by plaintiffs, who maintained a public garage and shop near the work for the storage and repair of automobiles and motor trucks, embraced within the language of the statute? Were they or any of them "work * * * tools, machinery, or materials". furnished under or for the purpose of such contract or for its completion in accordance with its terms?

Decision is not controlled, as in case of the ordinary written contract, by what the parties themselves may have contemplated as being within the bond. Its language is that of statute, and the question, what did the legislature mean. As left by the revision of 1905 (R. L. 1905, § 4535) the law was in its present form except for the amendment by L. 1923, p. 534, c. 373, requiring a bond to protect, in addition to those doing work or furnishing skill, tools, machinery, materials or insurance premiums, those also who furnish "equipment or supplies for any camp maintained for the feeding or keeping of men and animals engaged under, or for the purpose of, such contract." That amendment was designed to secure protection for those who furnished such things as food for horses and men, and camp supplies, which were not considered "materials" for the work under the old statute. Fay v. Bankers Surety Co. (1914) 125 Minn. 211, 146 N. W. 359, Ann. Cas. 1915C, 688; Westling v. Republic Cas. Co. 157 Minn. 198, 195 N. W. 796; Standard Oil Co. v. Remer, 170 Minn. 298, 212 N. W. 460; Hansen v. Remer, 160 Minn. 453, 200 N. W. 839. Our statute goes much further than many others in including "tools, machinery or materials." See Franzen v. Southern Surety Co. 35 Wyo. 15, 246 P. 30, 46 A. L. R. 496. In consequence we have held that the rental of tools and machinery used on a public contract is within the coverage of the bond. Miller v. American Bonding Co. 133 Minn. 336, 158 N. W. 432. So also as to the rental of horses. Dawson v. N. W. Const. Co. 137 Minn. 352, 363, 163 N. W. 772. There has never been question but that coal (Fay v. Bankers Surety Co. 125 Minn. 211, 146 N. W. 359, Ann. Cas. 1915C, 688) and gasolene and oil (Bartles-Scott Oil Co. v. Western Surety Co. 161 Minn. 169, 200 N. W. 937) used in generating power for the performance of a contract, are within the bond.

Literally, in its inclusion of equipment and machinery, the statute reaches the cost of new articles purchased by a contractor for use and used on a given work, even though they become part of his permanent and general equipment and will serve on other and perhaps many other contracts as well. But to conclude that the language was meant so literally would lead at once into absurdity. Plainly it was not intended that sureties for a $25,000 contract may be liable for the cost of a steam shovel outfit purchased, to be first used on that job, at a cost of possibly twice the contract price. So, as frequently happens, the language must be restricted within the reasonable limits easily found when applied to its subject matter. The law was not intended to permit a contractor to go onto a bonded job with a run-down outfit and have it rebuilt at the expense of his sureties. Public contracts require the contractors to furnish their own equipment. They imply that it shall come onto the job complete, ready for use, and without any obligation against the work arising from antecedent conditions. Moreover, they demand, expressly or by direct implication, that his equipment be maintained by the contractor in a workable condition to the end that the job may be done expeditiously and within the contract price. In consequence, no legislature has enacted, unless it be that of West Virginia [see Hicks v. Randich (W. Va.) 144 S. E. 887] and no court held, that the bondsmen shall be liable for the purchase price of contractors' equipment, unless perchance it is of a kind which is to be used only on the job in question and is wholly consumed thereon, or at least consumed to the extent that there is no residual use or value except as salvage. Dennis v. Enke (S. D.) 224 N. W. 925.

If a motor truck purchased for immediate use on a public contract will in the normal course of things serve on others as well, its cost is not within the coverage of the contractor's bond. So also if a truck break down on the job beyond possibility of repair or be completely wrecked and be replaced by a new one which will serve other jobs as well, the cost of the new machine is not within the bond. The same must be true of any part of a machine which

through use or casualty must be replaced. If it is such that it will normally not only serve the job in hand but others as well, its cost is not covered. That conclusion must be adopted and adhered to or else there is none which will serve as a guide in determining, as to tools and machinery and the cost of repairing the same, whether the contractor's sureties are liable.

The foregoing does not overlook a class of repair work, minor in cost but of constant presence and importance, which may be within the bond on the job where it is done even though the contractor will have use of it on other work also. A contractor frequently maintains a repair shop for the maintenance of his own equipment or that of subcontractors. The employes therein may be protected by the bond, notwithstanding some of their work serves other jobs as well, simply because their employment itself is "under or for the purpose" of the contract in hand. Such men may be hired and used "for the completion of the contract in accordance with its terms" and so, entirely apart from the mere circumstance that some of their work will contribute to succeeding contracts, they may be within the bond on the one under way at the time being.

In Miller v. American Bonding Co. 133 Minn. 336, 158 N. W. 432, it was held that while there could be no recovery on a contractor's bond for the original cost of tools and machinery, yet there could be for labor and material in repairing such tools and machinery. In practical application there is a line along which those two conclusions will seem frequently to overlap, where the question will recur whether an item is for mere repair or for a new tool or machine furnished not only for the contract in hand but for others as well. No formula will do away with a margin of uncertainty where the issue will be of fact. But the consideration that denies recovery for the price of a truck, because it is machinery which will serve not only the one in hand but other contracts as well, must also deny recovery for the cost of a new engine for the truck when the old one is replaced. The same thought follows through to the cost of a new engine block and pistons. Such a replacement may be just as much the furnishing of new machinery to

replenish contractor's plant, not alone for the job in hand but for others as well, as is the purchase of the complete truck in the first instance.

Therefore the surety for the pending contract should not be liable. The determinative distinction is between items going into the work or contributing to its execution and nothing else and those "properly chargeable to general plant and equipment of the contractor" and so available not only for the pending work but for others also. Dennis v. Enke (S. D.) 224 N. W. 925, 928.

There are minor things about machinery which are short-lived and subject to frequent destruction and replacement. The underlying equity requires discrimination "between labor and materials consumed in the work or in connection therewith, and labor and materials made use of in furnishing the so-called contractor's plant, and available not only for this, but for other work. * * * It has, however, no necessary relation to repairs of an incidental and comparatively inexpensive character, made on the plant during the progress of the work, representing only * * * ordinary wear and tear" or its equivalent. American Surety Co. v. Lawrenceville Cement Co. (C. C.) 110 F. 717, 721. Compare City of Alpena v. Title G. & S. Co. 159 Mich. 329, 123 N. W. 1126, denying recovery on contractor's bond for repairs of dredge, pumps and other machinery; and City of Alpena v. Title G. & S. Co. 159 Mich. 334, 123 N. W. 1127, denying recovery for expense of raising a sunken dredge to resume work on the contract; Standard Boiler Works v. National Surety Co. 71 Wash. 28, 127 P. 573, 43 L.R.A. (N.S.) 162. See also annotations ("contractor's equipment" and "job repairs") 43 L.R.A. (N.S.) 165-166, and L. R. A. 1915F, 951.

Not to attempt delimitation of the margin where the issue must be of fact, but solely for purposes of illustration, the spark plugs of internal combustion engines may be mentioned. If one is broken or worn out it must be replaced at once. Technically it is a replacement and may serve on other work, yet it is also a minor matter of current and merely incidental repair. So also grease cups on trucks or other machinery are frequently knocked off and lost and

must be replaced. Bolts break or are lost, and minor parts bent or broken must be straightened or welded. Tires of motor trucks are parts of the complete machine which on principle may or may not be chargeable against the bondsmen, according as there is or is not proof that they were consumed on the particular contract.

In the instant case, while denominated repairs and properly so considered in one sense, most of the items represent such important replacements of plant and machinery that they are in a class with the cost of new machinery. There is no proof that they were furnished for the Norden contract as such or that they were consumed on that job and were not as much or more useful on others to follow. They cannot therefore be considered within the limit of mere current repairs such as those involved in Miller v. American Bonding Co. 133 Minn. 336, 158 N. W. 432. They are rather within the branch of that decision dealing with the cost of new machinery. That conclusion is reached because the purpose of the law is to protect only those who furnish things for the job covered by the bond and not those who sell the contractor things which go into his general plant and will serve him not only upon the job in hand but such succeeding ones as he may undertake.

It is probable that the conclusions we have reached and the reasons for them dispose adversely to plaintiffs of most of their claims, yet the case must go back for a new trial rather than for judgment for defendants. In the absence of proof that they were at least substantially consumed on the Norden contract, there can be no recovery for such things as assemblies of cylinder blocks and pistons, new main bearings, drive shafts, universal joints, storage batteries or tires. Beyond that we cannot go on the record as it stands in applying our conclusions to the claims for other items. Counsel however with their complete knowledge of the facts should be able to dispose of the matter without another trial.

The argument for defendant that a check tendered by Norden to plaintiffs in full payment of their claims was accepted as absolute rather than conditional payment needs no discussion. The check was not paid by the drawee bank and seems to have been worthless.

Anyway the issue as to whether it was accepted in absolute payment was submitted to the jury, who found adversely to defendant, and we find no reason for disturbing the verdict on that issue.

There must be an affirmance on the appeal of plaintiffs and a reversal on that of defendant National Surety Company.

So ordered.