GENERAL MOTORS TRUCK COMPANY v. JAKE PHILLIPS AND OTHERS.
CENTRAL WEST CASUALTY COMPANY, INTERVENER.[1]

April 27, 1934.

No. 29,882.

[1]Reported in 254 N. W. 580.

468

Oscar R. Knutson, for appellants Anderson and Western Surety Company.

Lynn B. Carroll, for appellant-intervener.

Clarence T. Lowell, for respondent.

I. M. OLSEN, Justice.

Appeal by the defendants S. J. Anderson and Western Surety Company, and the intervener, the Central West Casualty Company, from an order denying their alternative motion for judgment notwithstanding the verdict, or, if that be denied, for a new trial.

Defendant S. J. Anderson was a contractor having a contract with the commissioner or department of highways for the construction of a portion of a state highway. The defendant Western Surety Company was surety on the bond given by Anderson to the highway commissioner or department under the provisions of the state statute. Anderson had sublet a part of the work to Jake Phillips, doing business as Phillips Brothers. The intervener, Central West Casualty Company, is surety on the bond given by Phillips to Anderson to secure performance of the subcontract.

The claim sued upon is for repair parts and repair work on trucks used by Phillips in part performance of his subcontract.

Plaintiff recovered a verdict for $394.26 against the three appellants.

The only points argued in appellants' brief are that the repairs in question were not such minor repairs as are covered by the surety bonds, but were replacements of substantial parts of the trucks used by Phillips, and so no recovery could be had against these appellants. There is some claim, not much argued, that the cost of hiring a repair man to put these repairs on the trucks and for doing other work to keep the trucks in running order is not recoverable.

The question of what repairs come within the coverage of these statutory surety bonds has been considered in several opinions of this court. It has been and is a troublesome question.

■ On the question of the cost of the services of a mechanic to repair the trucks and keep them in running order little need be said. He was an employe of Phillips on this particular job. Without his services there would be delay and difficulty in keeping the work going. His work was entirely confined to and used up on the job. He was as much a workman on the job as if he had been running a truck, shoveling earth or gravel, or doing any other work necessary in carrying out the contract. We see no ground for holding that his work does not come within the coverage of the bonds. Maryland Cas. Co. v. Ohio River Gravel Co. (C. C. A.) 20 F. (2d) 514.

■ As to the repair parts, the question is more difficult. The total of the cost of the parts required for these repairs was $177.96. The balance of the claim was for the work of the mechanic. This $177.96 was for 24 separate repair parts. The most expensive parts were five axle shafts costing $16.98 each. The next highest were two sliding shafts costing $14.85 each. There was a bumper costing $9.33. There were two steering tubes costing $6.89 each. The other parts were 14 small items costing from a few dollars down to a few cents each. The evidence does not show upon how many of the trucks these repair parts were used. There were apparently some 16 or more trucks in use. The repairman Carlson testified that he kept all the trucks except three in running order and repair.

The statute which enters into and is a part of these surety bonds is broad in its terms. It provides that the bonds shall cover the liability of the contractor to "all persons doing work or furnishing skill, tools, machinery or materials or insurance premiums or equipment or supplies for any camp maintained for the feeding or keeping of men and animals engaged under, or for the purpose of, such contract, conditioned for the payment, as they become due, of all just claims for such work, tools, machinery, skill, materials, insurance premiums, equipment and supplies, for the completion of the contract in accordance with its terms." L. 1931, c. 229, Mason Minn. St. 1934 Supp. § 9700.

Our own cases on the question of recovery for repairs to machinery and equipment do not lay down any definite rule as to what items are or are not covered by the contractor's statutory bond. As said in Clifton v. Norden, 178 Minn. 288, 292, 226 N. W. 940, 941, 67 A. L. R. 1227:

"No formula will do away with a margin of uncertainty where the issue will be of fact."

In Fay v. Bankers Surety Co. 125 Minn. 211, 146 N. W. 359, Ann. Cas. 1915C, 688, an action on the bond of a ditch contractor, it was held that recovery could be had for items of coal and wood used in generating power for the ditching machinery and for labor of a cook for the men. Recovery was denied for the cost of new axes and saw blades and for horse feed and provisions. The statute at that time did not provide any liability "for the feeding or keeping of men and animals" engaged in the work. In Rosman v. Bankers Surety Co. 126 Minn. 435, 148 N. W. 454, it was held that recovery could be had for cost of the labor in dismantling, moving, reassembling and putting into condition to operate a ditching machine, which the contractor owned and which was in condition to operate but was at a location some distance away at the time the contract was made, and so had to be taken apart, moved to the place where the work was to be done, and there reassembled and put in condition to operate. These cases throw some light on the question here presented. Concededly the purchase and furnishing

of tools and machinery for the work, as distinguished from repairs to machinery in use, does not create any liability under the bond of the contractor, under our decisions. We have next the case of Johnson v. Starrett, 127 Minn. 138, 149 N. W. 6, L. R. A. 1915B, 708. But that was an action to foreclose a mechanic's lien, and the issue was whether certain items constituted liens against the property under the statute governing mechanics' liens. The case is distinguished as not applicable to an action on a highway contractor's bond in Miller v. American Bonding Co. 133 Minn. 336, 158 N. W. 432, 433. In the Miller case, the court gave full effect to § 4 of the original law exacting a bond from contractors on public works, although R. L. 1905 combined §§ 1 and 4 of the original law, L. 1895, c. 354, in condensed form and left out some of the words used in c. 354, § 4. The court said [133 Minn. 340]:

"It seems quite clear that the law, as it existed just prior to the taking effect of Revised Laws 1905, did not give a cause of action on the contractor's bond for the purchase price of a tool or a machine sold to the contractor to be used in a public work or improvement. But it was given for the repair of a tool or machine, and for the value of the use in case the contractor rents it for the job. Where the work is of such character that the use of extensive and costly machines are required, it is reasonable to consider that the wear and tear of these machines is a necessary contribution to the work, or, in other words, the reasonable value of the use of the machines contributes as much to the construction in hand as does the reasonable value of the manual labor expended thereon. So also, in the performance of every improvement or work of any magnitude, the tools become dulled and out of repair, and the machines used thereon break or wear out parts; and, in order to proceed efficiently with the work, these matters must be attended to and require labor, skill and material."

The court in that case held that the statute did not impose liability on the bond for machinery and tools purchased by the contractor in the first instance for use upon the job, but also held that the statute did impose liability under the bond for repair parts furnished

to replace broken parts on machinery while in use and for labor in making such repairs. The court said further [133 Minn. 341]:

"The purchase price of the tool or machine does not in any proper manner measure the seller's contribution to the work of the contract, but insofar as it is furnished to be used in the work and therein is broken or depreciated, there can properly be said to be a contribution to the work under construction, thus affording a reasonable basis for legislation charging liability against the contractor's bond."

As shown by the record, there were 21 causes of action in the complaint in that case. The appeal came here from an order sustaining a demurrer to ten of these causes of action. This court affirmed the trial court's order as to two of the causes of action, but reversed as to eight causes of action, holding that these causes of action were good. Among the causes of action so sustained, we find charges for furnishing repair parts for machinery used on the job as follows (selecting only the larger items): 1 belt for stone crusher, $54.50; 1 asphalt kettle, $42; 20 expansion plates, $10; furnishing labor and material in making repairs upon and keeping in running order an automobile used, $202.43; new shoes for horses, setting shoes, and repairs on tools and implements, $108; new shoes and setting shoes, $19.75. While that case does not specifically hold that all these items are recoverable, it does clearly indicate that ordinary repair parts may be recovered for.

In the case of Clifton v. Norden, 178 Minn. 288, 226 N. W. 940, 67 A. L. R. 1227, the plaintiff sued to recover for repair parts and repair work. The Miller case, 133 Minn. 336, 158 N. W. 432, is construed but not overruled. Clifton v. Norden, 178 Minn. 288, 226 N. W. 940, 67 A. L. R. 1227, does not specify what repair parts there involved were recoverable. It does hold that, in the absence of proof that they were at least substantially consumed on the Norden contract, no recovery could be had on such items as assemblies of cylinder blocks and pistons, new main bearings, drive shafts, universal joints, storage batteries or tires, and classes these items as such important replacements of plant and machinery as

to be in the same category as the cost of new machinery. However, the Norden case recognizes that recovery may be had for minor things, subject to frequent destruction and replacement, or repairs of an incidental and comparatively inexpensive character, made necessary during the progress of the work from ordinary wear and tear. The repair parts here in question come within that rule. These repair parts were such as in the ordinary use of trucks on highway work frequently wear out or break. None of them constituted a major or substantial part of the trucks. The work could not progress without prompt repair and replacement of these minor parts. That some of them might not be wholly worn out or broken on this particular job is not sufficient ground for denying recovery. The rule that the repair part must be such as to be wholly consumed on the job does not apply to these minor items. If that rule were strictly applied, practically no recovery could be had for any minor repair part. If a few bolts broke or a few nuts were lost from bolts and were replaced, no recovery therefor could be had because ordinarily such bolts and nuts would outlast the job.

We do not here attempt to lay down any hard and fast rule as to what repair parts, in a case of this kind, result in liability on the contractor's bond. The facts will differ in each particular case. We do hold that the repair parts here in question were minor, comparatively inexpensive, current repair items such as frequently wear out or break and have to be replaced in the operation of a fleet of trucks in road work, and were not such major replacements as come within the rule denying recovery for the cost of new tools or machinery.

Cases from other states, under somewhat different statutes or under decisions of courts that follow different rules, are not of much aid, and we do not attempt to analyze them. The case of Western Material Co. v. Enke, 56 S. D. 302, 228 N. W. 385, is of interest because it quotes extensively from our case of Miller v. American Bonding Co. 133 Minn. 336, 158 N. W. 432, and as showing that the South Dakota court, while giving full effect to the Miller case, allowed recovery for items of repair costing as much as $98 each, and, in Dennis v. Great Northern Const. Co. 53 S. D.

646, 222 N. W. 269, allowed an item of $148.25 for a belt used with a grader. The holding in these cases was that these items were repairs ordinarily and reasonably necessary to keep the machinery in operating condition to the end that the contract might be duly performed, but it was also held that the purchase price of substantial items of general plant and equipment was not recoverable. The South Dakota cases, while not controlling, throw some light on the question. The conflicting views of the courts are pointed out in the notes to Clifton v. Norden, 178 Minn. 288, 226 N. W. 940, in 67 A. L. R. 1227, commencing on page 1232.

■ Error is claimed on the admission of opinion evidence by the expert mechanic that these repairs and repair parts were minor and incidental repairs only. If this was error, it was not prejudicial. On the evidence presented, without reference to this opinion evidence, plaintiff was entitled to recover.

The order appealed from is affirmed.

*JULIUS J. OLSON, Justice,* took no part.