13898

CANTEY v. NEWELL CONTRACTING CO. *ET AL.*

(178 S. E., 342)

*Messrs. McLeod & Shore* and *Dinkins & Stukes,* for appellant.

*Messrs. Price & Poag,* for respondent, Newell Contracting Co.,

*Mr. Charlton DuRant,* for respondent, Indemnity Ins. Co. of North America,

January 30, 1935.

The opinion of the Court was delivered by MR. C. T. GRAYDON, ACTING ASSOCIATE JUSTICE.

The Newell Contracting Company was employed by the highway department of South Carolina to do certain construction work on State Highway No. 30, in Clarendon County, commonly known as Project No. 273.

The cause of action here alleged is in behalf of David Cantey, Jr., by his guardian *ad litem,* David Cantey, Sr., against the Newell Contracting Company and the Indemnity Insurance Company of North America as surety for alleged injuries received by David Cantey, Jr., while he was employed upon the work above referred to. The allegations of the complaint are that the agent or servant of the Newell Contracting Company attacked the said David Cantey, Jr., and inflicted severe blows in and to his body while he was at work.

The record in the case shows that the actual injury done to David Cantey, Jr., was by a man named Campbell, who was employed by the Batesburg Construction Company, a sub-contractor of the Newell Contracting Company.

The highway department requires the giving of a contract bond pursuant to certain requirements as a prerequisite to the granting of all contracts with the department for such type of construction. Bond is given to insure the faithful performance of said work in accordance with the requirements, and in Paragraph 1, sub-division 14, of the requirements of the highway department, we find the following: "The corporate body which is bound with and for the Contractor, who is primarily liable, and which engages to be responsible for his payment of all debts pertaining to and for his acceptable performance of the work for which he has contracted."

The requirements further state, in Paragraph 4, sub-division 5, that detours shall be provided for the convenience of the public.

In Paragraph 7, sub-division 7, the requirement is placed upon the contractor to provide, erect, and maintain barricades, red lights, danger signals and signs, watchmen and other necessary precautions for the protection and safety of the public.

Paragraph 7, sub-division 10, requires the contractor to

save the county harmless from actions brought against the county in connection with said work.

The above provisions of the requirements in connection with the contract clearly demonstrate that it was the intention and purpose of the highway department to see that all people who had legal claims against the contractor were properly and promptly paid. This Court has said in numbers of cases that material and labor claims are protected under this bond, although it cannot be denied that such persons furnishing labor and material would have no claim whatsoever against the highway department. The contractor is an independent contractor, and by no stretch of the imagination could the highway department be responsible for anything done by the contractor, any materials obtained, or any labor secured, but the highway department, desiring that these claims be discharged, made this contract which has been construed by this Court to be a contract between the department and the contractor, but for the benefit of third persons who furnish labor or materials in the construction.

Admitting, therefore, that the highway department is not responsible for labor and materials, and that the bond is required for the protection of those who furnish labor and materials on the contract, the only question here to be considered is whether the language of the bond includes those who are injured in and about the construction.

In the requirements by the highway department, the word "debt" is used, and this would include any form of claim against the contractor which could be legally established, for the word "debt" is the most inclusive word known to the law with reference to obligations. The terms of the bond itself are plain that material and supplies furnished are included, and the word "labor" is used, but this Court has construed that in other bonds where labor is not mentioned that laborers come within the broad provision of a similar bond, and are therefore entitled to have their claims paid. We find

that the bond uses the following words in connection with injuries: *"And shall have paid and discharged all liabilities for injuries which have been incurred in and about the said construction,* under the operation of the statutes of the State, and shall save harmless the party of the first part to the said contract for any losses due to the infringement of any patents,"* etc. (Italics added.)

It will be seen from a reading of the above that the contractor agrees *to save harmless* the State highway department from losses due to infringement of patents and the like, and this clause is below the clause referring to the injuries. There can be no contention that the contractor *does not agree to save the highway department harmless for injuries which have occurred in and about the said construction,* but the obligation is direct to pay and discharge all liabilities for injuries. The bond does not say that these liabilities for injuries shall be only to the traveling public or those not engaged in the construction, but it says for all injuries incurred in and about the said construction.

It is true that the words "under the operation of the Statutes of the State" are used, but this refers to the letting of the contract, the statutes governing the same, and not to the statutes with reference to injuries on highways. It would have been simple had the highway department desired to limit the bond to causes of action arising under the operation of the statutes which impose liability upon the county and the State for injuries and damage to so state in plain language, but this is not done, and this is conclusive of the proposition. Let us consider for a moment what our Court has said with reference to these and similar contracts.

In the case of *Mack Mfg. Co. v. Massachusetts Bonding Co.,* 114 S. C., 207, 103 S. E., 499, this Court held that materialmen were protected under a similar bond, and the judgment of the lower Court was reversed for the surety company and the case was sent back for trial.

Another case considered is that of *Standard Oil Co. v. Powell Paving & Contracting Co.,* 139 S. C., 411, 138 S. E., 184, 192. The Court in this case holds that the contract and the bond should be considered together, and that, where the contract is made between two persons for the benefit of the third party even though the third party be not named therein, the third party could, enforce such contract. The Court further held that the bond for the performance of a paving contract did include the claims of materialmen. The very exhaustive report by the master in this case is affirmed by this Court, and in the opinion by Mr. Justice Stabler, speaking of the definition of surety, the following statement is found: "That definition states that the surety 'engages to be responsible for his (contractor's) payment of all debts pertaining to  * * *  the work for which he has contracted.' "

In this case, in the dissenting opinion where Mr. Justice Cothran contended that materialmen could not sue the surety company direct, there is a quotation from *Southern Surety Co. v. U. S. Cast Iron Pipe & Foundry Co.* (C. C. A.), 13 F. (2d), 833: "Manifestly the city could suffer no pecuniary loss due to the failure of the contractor to pay for materials, because there was no obligation on the part of the city to pay for such materials."

Our Court refused to adopt this view.

In the case of *American Hardware Co. v. Detroit Fidelity Co.,* 159 S. C., 263, 156 S. E., 770, the Court holds, citing a number of the above cases, that the surety is responsible for the purchase price of a movable gas engine pump with the accessories, and affirms the judgment of the County Court of Richland County with reference to this matter.

The case of *Crum v. Jenkins,* 145 S. C., 177, 143 S. E., 21, also discusses this question, and holds that the bonding company would not be responsible for liquidated damages for the delay in the completion of the contract.

The case cited in the brief of appellant of *Roper Lumber Co. et al. v. Lawson et al.,* 195 N. C., 840, 143 S. E., 847, 848, 67 A. L. R., 984, is an action for damages to the lands of the Roper Lumber Company by fire alleged to have been set by Lawson & Brooke, contractors, who were building a public highway under contract with the state highway commission of North Carolina. The suit was against Lawson & Brooke and the United States Fidelity & Guaranty Company as surety, and the Supreme Court of North Carolina held that the surety was not responsible under the bond for this type of damage.

An examination of the terms of the bond in the *Roper case* shows that the bond is entirely different from the bond here under consideration. Referring to the material parts of the bond in the *Roper case*, we find the following: "And shall well and truly pay all and every person furnishing material or performing labor in and about the construction of said roadway all and every sum or sums of money due him, them, or any of them for all such labor and materials for which the contractor is liable, and also shall save and keep harmless the said state highway commission of North Carolina against and from all losses to it from any cause whatever, including patent, trademark, and copyright infringements in the manner of constructing said project. * * *"

It will be seen from the above that the only agreement of Lawson and Brooke under the above contract was to pay for the material and labor and also to save the highway commission of the State of North Carolina harmless from any cause.

Therefore the bond is different in its terms, and, if we follow the North Carolina case, it would conflict with the ruling of our Supreme Court in the case of *Caldwell v. Carroll,* 139 S. C., 163, 137 S. E., 444, 446.

In the *Caldwell case,* suit was brought by several different Caldwells against J. L. Carroll, the American Surety Com-

pany, and Colleton County. The suit was one for alleged
fire set out on the property of the plaintiffs by the defendant
J. L. Carroll. J. L. Carroll, the American Surety Com-
pany and Colleton County all filed motions to make the com-
plaint more definite and certain, and then J. L. Carroll, the
American Surety Company, and Colleton County all filed
demurrers to the complaint. The matter was heard before
Judge Wilson, and Judge Wilson passed an order refusing
the motions to make the complaint more definite and certain
and overruling the demurrers, which certainly means that
the cause of action for the setting out of a fire by contractor
is good as against the county and the surety company. Upon
appeal, Mr. Justice Watts delivered the opinion of the Court,
affirmed the finding of the Circuit Judge, and the quota-
tion from this opinion is sufficient to show the point raised:
"If the fire was the result of the negligent act of Carroll
or the hands employed by him in working the roads of Col-
leton County, under contract between Carroll and Colleton
County, acting in the scope of their authority and em-
ployment, then both Carroll and Colleton County would be
liable to respond in damages for the loss sustained by the
respondents by the negligent or willful and wanton acts of
Carroll or the hands employed by him, under his control
and supervision, acting in the scope of his authority. As
to the bond of the American Surety Company of New York:
At the trial the bond will show for itself what the surety
company became liable for; that is a matter of defense by
the surety company and cannot be determined by the de-
murer interposed by them."

Mr. Justice Cothran rendered a vigorous dissenting opin-
ion, but the Court held to the view expressed by Mr. Justice
Watts, and the matter came for a rehearing, which was de-
nied; Mr. Justice Cothran again dissenting from the views
of the Court.

If the *Roper case* from North Carolina is followed, this
Court must overrule by inference the *Carroll case*.

82

Considering all of these opinions and how this Court has inserted the word "labor" in some of the contracts, has permitted materials of a permanent nature purchased on the contract to be included, has protected claims of third parties for damage done to their property by fire set out by the contractor, the conclusion cannot be escaped that the bond intended to, and by its plain words does, protect persons who receive injuries upon the work.

The second contention is that the Batesburg Contracting Company is responsible for the injuries done to Cantey, and that said contracting company is an independent contractor. The plain wording of the bond says that the same shall not be sub-let without the *"written consent of the Chief Highway Commissioner."* It is impossible to make the language any plainer to show that the highway commission did not wish contracts sublet to indigent and impecunious contractors without the written consent of the highway commissioner. The proposal further says: "Any sub-contractor, regardless of whether he has been approved by the State Highway Department, will be considered an agent of the principal contractor, provided that this shall not serve to make the principal contractor liable for purchases made by the sub-contractor from third parties without the specific approval of the principal contractor."

The plain import of this language is that the highway department did not wish claimants to be required to litigate with numbers of sub-contractors, but that the principal contractor should be responsible.

Civilization is becoming very complex. The construction of a road required numbers of operations which may or may not be performed by one contractor. The surveying has to be done. The grading of the road and the moving of the dirt is required. The terrain has to be set and re-surveyed for the putting of the road in final form. Crushed rock is purchased from, and generally delivered by, an independent contractor. The cement is furnished by probably an-

other corporation. The mixing perhaps is done by someone else. The clearing of the right of way may be done by still another. In this complex situation, is was the idea and purpose of the highway department to make the contractor pay *all legal debts* which were incurred in and about the construction.

This Court is not attempting to pass here upon the validity of the claim of the plaintiff in this action. He will have to establish that claim by legal proof under the well-established rules of evidence in our Courts.

This is a hard case on the surety company. However, our sole inquiry is in the words of the classics: "Is it so nominated in the bond?" It is so nominated in the bond, and this Court so holds.

The judgment of this Court is that the judgment of the Circuit Court is reversed, and the case remanded for a new trial in accordance with the views herein expressed.

MESSRS. JUSTICES STABLER and CARTER concur.

MR. JUSTICE BONHAM concurs in result.

MR. JUSTICE BONHAM (concurring in result) : I concur in the result of this opinion upon the strength of the case of *Caldwell v. Carroll,* 139, S. C., 163, 137 S. E., 444, by which I am bound.