16552

KLINE *ET AL.* v. McMEEKIN CONST. CO. *ET AL.*

(67 S. E. (2d) 304)

*Messrs. Baker & Baker* and *F. Ehrlich Thomson,* of Columbia, *for Appellant,*

*Messrs. J. D. Nock,* of Cheraw, and *John H. Lumpkin* and *J. B. S. Lyles,* of Columbia, *for Respondents,*

*Messrs. Baker & Baker* and *F. Ehrlich Thomson,* of Columbia, *for Appellant, in reply,*

October 11, 1951.

TAYLOR, Justice.

This appeal involves liability of respondents to appellant for payment of the purchase price of four steel beams furnished during the construction of a bridge in the South Carolina Highway System. Appellant contends that respondents are indebted to it in the sum of $1,631.08, such being the unpaid purchase price for four steel beams, sixty feet long, delivered to Steel Erectors, Inc., for use in construction of a bridge which respondent, McMeekin Construction Company, was under contract to construct for the South Carolina Highway Department. It appears that respondents entered into bond with the said Highway Department wherein it was agreed that they would "pay when and as due all lawful claims for labor performed or materials and supplies furnished for use in and about the construction of said highway or highway structures" and appellant contends that respondents are thereby liable for the purchase price of the aforesaid steel furnished. Respondents' answer was a general denial.

The case came on to be heard before the Honorable Steve C. Griffith and a jury in the Common Pleas Court for Richland County. At the close of appellant's testimony respondents moved for a nonsuit which was overruled. At the close of all the testimony appellant and respondents each moved for directed verdicts. At this stage of the trial it was agreed between the parties that there was no disputed issue of fact to be submitted to the jury, as a result of which the entire matter was submitted to the Trial Judge for determination, with both sides furnishing written briefs. Thereafter, on the 24th day of February, 1951, the Presiding

Judge filed his order granting respondents' motion for a directed verdict and ordering the complaint dismissed.

Appellant now comes to this Court contending that the Trial Judge erred in finding that the steel beams furnished by appellant to the subcontractor upon the highway project in question were equipment of the subcontractor, whereas he should have found that the steel beams furnished were material furnished for use in and about the highway project in question and therefore within the meaning and purview of the contract and bond issued pursuant thereto.

It is not disputed that respondents entered into a contract with the South Carolina Highway Department for the construction of a steel superstructure over the Santee River on Route 511 near Jamestown, South Carolina, and that respondent sublet a part of that contract to Harvey Stewart Contracting Company, of Charlotte, North Carolina, who apparently sublet to Steel Erectors, Inc., the steel work necessary to the construction of the bridge. The Trial Judge concluded and so found that if Steel Erectors, Inc., was not a subcontractor, it was an employee and agent of Harvey Stewart Contracting Company, who was a subcontractor of McMeekin Construction Company, and there is no appeal from this finding.

The pertinent language of the bond entered into by the McMeekin Construction Company appears as follows: "The condition of this obligation is such that if said bounden principal McMeekin Construction Company shall in all things well and truly perform all the terms and conditions of the foregoing contract to be by them/him performed and within the time provided, and shall pay when and as due all lawful claims for labor performed or materials and supplies furnished for use in and about the construction of said highway or highway structures * * *, then this obligation to be void; * * *."

In the construction of the bridge in question Steel Erectors, Inc., used a 100-foot mast and a 90-foot boom with the

four steel beams in question being used as outriggers. The respondents contended, and it was so held by the Trial Judge, that these steel beams thereby became an integral part of Steel Erectors' permanent equipment, in that they became a part of the derrick which was, of course, an essential part of the subcontractor's permanent equipment. Appellant contends, however, that these beams never attained such status, but were material furnished for use in and about the highway project.

We have been unable to find any case in this State that precisely fits the facts under consideration and counsel has cited none, but the rule appears to be that such incidentals as coal, gasoline, and current repairs to machinery, etc., should be included within the purview of the bond, these items being ancillary, but necessary to the prosecution of the work, while permanent additions to a contractor's equipment which by their nature are neither depreciated nor consumed on the contract are not. *Standard Oil Company of New Jersey v. Powell Paving & Contracting Co.*, 139 S. C. 411, 138 S. E. 184; *American Hardware & Equipment Co. v. Detroit Fidelity & Surety Co.*, 159 S. C. 263, 156 S. E. 770; *Molony & Carter Co. v. Pennell & Harley, Inc.*, 169 S. C. 462, 169 S. E. 283; *Cantey v. Newell Contracting Co.*, 175 S. C. 74, 178 S. E. 342; *Miller v. Cornell-Young Co.*, 171 S. C. 228, 171 S. E. 790.

The underlying equities require discrimination between labor and materials consumed in the work or in connection therewith and those made use of in furnishing the so-called contractor's plant and available not only for the particular contract but for other work. Tools, machinery and appliances used by the contractor, although worn out in the progress of the work, are not such labor and materials as are ordinarily contemplated by contractor's bonds. 43 Am. Jur., Sec. 186, page 927.

The Supreme Court of Minnesota said in *Clifton v. Norden, 178 Minn.* 288, 226 N. W. 940, 941, 67 A. L. R. 1227:

"If a motortruck purchase for immediate use on a public contract will in the normal course of things serve on others as well, its cost is not within the coverage of the contractor's bond. So also if a truck break down on the job beyond possibility of repair or he completely wrecked and be replaced by a new one which will serve other jobs as well, the cost of the new machine is not within the bond. The same must be true of any part of a machine which, through use or casualty, must be replaced. If it is such that it will normally not only serve the job in hand but others as well, its cost is not covered. That conclusion must be adopted and adhered to, or else there is none which will serve as a guide in determining, as to tools and machinery and the cost of repairing the same, whether the contractor's sureties are liable.

\* \* \*

"There are minor things about machinery which are short-lived and subject to frequent destruction and replacement. The underlying equity requires discrimination 'between labor and materials consumed in the work or in connection therewith, and labor and materials made use of in furnishing the so-called contractor's plant, and available not only for this, but for other work. \* \* \* It has, however, no necessary relation to repairs of an incidental and comparatively inexpensive character, made on the plant during the progress of the work, representing only \* \* \* ordinary wear and tear' or its equivalent. \* \* \*

\* \* \*

"In the instant case, while denominated repairs and properly so considered in one sense, most of the items represent such important replacements of plant and machinery that they are in a class with the cost of new machinery. There is no proof that they were furnished for the Norden contract as such or that they were consumed on that job and were not as much or more useful on others to follow. They cannot, therefore, be considered within the limit of mere current repairs such as those involved in *Miller v. American Bonding Company* [133 Minn. 336, 158 N. W. 432], *supra.*

They are rather within the branch of that decision dealing with the cost of new machinery. That conclusion is reached because the purpose of the law is to protect only those who furnish things for the job covered by the bond and not those who sell the contractor things which go into his general plant and will serve him not only upon the job in hand but such succeeding ones as he may undertake". See note following and *Western Casualty Insurance Company v. Fulton Supply Company,* 60 Ga. App. 710, 4 S. E. (2d) 690.

In the instant case, the items under consideration are four sixty-foot steel beams, which were an essential part of a derrick being used to raise other steel beams to be fastened in place within the superstructure of the bridge. They were substantial items of equipment and there is nothing in the evidence to show that they were consumed or depreciated in the course of construction of the bridge at Jamestown. They were therefore available for use by Steel Erectors, Inc., on such construction as they might be engaged in in the future, thereby becoming a part of the general plant and equipment of the contractor.

For the foregoing reasons, we are of the opinion that the Trial Judge was correct in holding that the steel beams in question are to be classed as heavy equipment and not such materials and supplies as to come within the purview of the bond and that all exceptions should be dismissed, and It Is So Ordered.

BAKER, C. J., and FISHBURNE, STUKES and OXNER, JJ., concur.