17766

SOUTH CAROLINA SUPPLY AND EQUIPMENT COMPANY, Respondent, v. JAMES STEWART AND COMPANY, Inc., and United States Casualty Company, Appellants.

(119 S. E. (2d) 517)

*Messrs. Haynsworth, Perry, Bryant, Marion & Johnstone,* of Greenville, *for Appellants,*

*Messrs. Leatherwood, Walker, Todd & Mann,* of Greenville, *for Respondent,*

April 12, 1961.

TAYLOR, Justice.

This appeal from the Greenville County Court involves the question of liability for the failure to return certain equipment leased from Respondent which had been used in the construction of the Greenville Memorial Auditorium, at Greenville, South Carolina, and for rent due for the use of the equipment. There is no dispute as to the fact that the equipment was not returned. The question is whether both Appellants, or either of them, are liable therefor.

On May 3, 1957, Ivey Brothers Construction Company, Inc. (hereinafter referred to as Ivey), contracted to erect the Greenville Memorial Auditorium at Greenville, South Carolina, and executed a labor, material and performance bond as principal with the Appellant, United States Casualty Company, as surety. Shortly thereafter, Ivey experienced financial difficulty and could obtain no further financing for its several construction contracts, including that for the Greenville Memorial Auditorium. In order to make possible the completion of its contracts without default, an agreement was entered into on March 27, 1958, between Ivey, the sureties on its bond and Appellant James Stewart and Company, Inc. (referred to hereinafter as Stewart), whereby Stewart took over completion of the construction of the Greenville Memorial Auditorium.

Respondent is engaged as part of its business activities in leasing scaffold equipment for use in construction work. For the purpose of constructing the auditorium, Ivey rented from Respondent a number of scaffolds, a portion of which were delivered to the job after the Respondent Stewart assumed

responsibility for completion of the contract. The stipulated rental for the equipment was paid to Respondent by the Appellant Stewart as the job progressed with the exception of $92.70 claimed by the Respondent in this action as past due rent. Upon the return of the scaffolds to the Respondent on February 20, 1959, by the Appellant Stewart a shortage in the number returned was discovered. Claim was promptly made for the missing equipment and for the balance due as rent. Upon refusal of Ivey and Appellants to pay for the missing scaffolds or the rent due, this action was instituted against Stewart and United States Casualty Company for the recovery of the value of the scaffolds not returned in the amount of $997.01 and for past due rent for the equipment in the amount of $92.70, or a total of $1,089.71. Ivey was not made a party to the action.

Appellants duly answered denying liability. Upon trial each Appellant made timely motions for a nonsuit and at the conclusion of the testimony both Respondent and Appellants made motions for a directed verdict in their favor. The motions of the Appellants were refused and that of the Respondent was granted against both Appellants in the above amount with interest from February 20, 1959. This appeal is from the Order of the County Court refusing Appellants' motions for a directed verdict in their favor and granting that of the Respondent.

While the exceptions attempt to raise, and the briefs argue, additional questions, we think that a determination of two questions will dispose of all issues properly made in the appeal. These are:

(1) Can the Appellant Stewart be held liable for the loss of the scaffold equipment and for the rental for the use thereof?

(2) Can the Appellant United States Casualty Company as surety on the labor and material payment bond in this case be held liable for failure of the contractor to return equipment leased from the Respondent and used in connection with carrying out the contract of the contractor?

The complaint, after stating the corporate existence and residence of the parties, alleges that on May 3, 1957, Ivey Brothers Construction Company, Inc., entered into a contract for the construction of the Greenville Memorial Auditorium and executed a labor, material and performance bond with the Appellant United States Casualty Company as surety. It is then alleged that in September, 1958, the Respondent rented to Ivey Brothers Construction Company, Inc., for use in the performance of its construction contract 125 scaffold units; that on February 20, 1959, a part of the scaffold units were returned by the Appellant James Stewart and Company, Inc., which had taken over the construction of the Greenville Memorial Auditorium as agent of the Appellant United States Casualty Company; and that the said James Stewart and Company failed to return a part of the scaffold equipment of the value of $997.01, after demand, and had lost, misplaced or otherwise converted the same. There is also alleged a past due item of rent for the equipment of $92.70. The complaint then alleges "that in accordance with said bond" due notice of the claim was given to the principal and owner with a demand for payment which was refused, and that the failure to pay the sum alleged to the Respondent "constitutes a breach of the aforementioned bond."

The complaint clearly states a cause of action against the Appellant Stewart in tort for the conversion of Respondent's property, and against the Respondent United States Casualty Company as surety on the bond in question.

So construing the complaint, Appellant Stewart is liable for the conversion of Respondent's property and for rent for its use. If this Appellant was acting as the contractor in the construction of the Greenville Memorial Auditorium, there can be no question as to its liability for the past due rent item of $92.70 and for the scaffold equipment not returned to Respondent of the value of $997.01, for there is no issue as to the amount of either item or that equipment leased by

the Respondent and used by this Appellant in the construction of the auditorium was not returned by Appellant to Respondent with the other items on February 20, 1959. The Appellant Stewart contends that in completing the construction of the auditorium it was acting as the agent and attorney in fact for Ivey, the original contractor, and, therefore, as such agent it would not be liable.

The contracts under which the Appellant Stewart completed the construction of the auditorium leave no doubt that it took over the work as contractor in the place of Ivey. These instruments were executed when Ivey could no longer carry forward construction by reason of financial difficulty. The sureties on Ivey's bonds were interested that there be no default in the construction contract. The contracts with the Appellant Stewart purported to constitute it as *agent and attorney* in fact for the following purposes, among others: (1) "To take over construction in every method and manner whatsoever," (2) To have "full, complete, uninterrupted and undisturbed supervision and control over the construction," (3) To collect, receive and receipt for all moneys due upon the projects from the owners, (4) To endorse all checks and instruments of payment so as to receive payment, (5) To exercise sole and uncontrolled discretion in all matters affecting labor, materials and subcontractors, (6) To employ and discharge personnel in its sole discretion, (7) To do all acts and things whatsoever in connection with the completion of the project. It was agreed that the so-called appointment as *agent* in said instrument was "coupled with an interest and are irrevocable." The instruments further recite that the agreements are "for the purpose of taking over construction" of the projects described. The only reasonable inference to be drawn from the record is that Stewart became the contractor for the completion of the construction of the Greenville Memorial Auditorium. The fact that it was designated "agent and attorney in fact" in the contracts is immaterial in determining Appellant's liability to third parties, where the agreement

clearly and plainly shows that it was substituted as the contractor for the completion of the project.

The record reveals that, as contractor for the completion of the job, Stewart received Respondent's equipment after taking over construction of the auditorium, paid the agreed rental thereon except the amount claimed herein of $92.70, used it until completion of the work, failed to return a portion of the equipment to Respondent as required under the rental agreement, and then refused, after demand, to pay the balance of the rental or for the property not returned. The trial Court properly held Appellant Stewart liable for both the rental due and the value of the property which was not returned to Respondent.

The remaining question concerns the liability of the Appellant United States Casualty Company for loss of the equipment under the provisions of the bond in question, its liability for the item of $92.70 for rent on the equipment having been conceded. As heretofore stated, the allegations of the complaint clearly show that this Appellant was sued not as principal but as surety on the bond. Its liability must, therefore, be determined accordingly.

The bond is a standard American Institute of Architects labor and material bond and creates the obligation on the surety to "propmtly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the contract." The bond defines a claimant "as one having a direct contract with the principal or with a sub-contractor of the principal for labor, material, or both, used or reasonably required for use in the performance of the contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the contract."

The bond, therefore, provides payment for all labor and material used or reasonably required for use in the performance of the contract for the construction of Greenville Me-

morial Auditorium and by its terms specifically includes the rental of equipment directly applicable to the contract.

The liability of Appellant United States Casualty ■ Company therefore turns upon the construction of the provision of the bond providing for payment for "labor and material" used in the construction.

The purpose of such a bond is to protect persons furnishing labor or materials for the job covered by the bond. In determining the scope of such coverage under the bond, "the underlying equities require discrimination between labor and materials consumed in the work or in connection therewith and those made use of in furnishing the so-called contractor's plant and available not only for the particular contract but for other work. Tools, machinery and appliances used by the contractor, although worn out in the progress of the work, are not such labor and materials as are ordinarily contemplated by contractor's bonds." *Kline v. McMeekin Const. Co.,* 220 S. C. 281, 67 S. E. (2d) 304, 305, citing 43 Am. Jur., Sec. 186, page 927.

We are of opinion that the scaffold equipment, while necessary to the prosecution of the contractor's work, must be classified as a part of the tools, appliances and equipment used by the contractor, and constitutes an item in his so-called plant. The fact that scaffolds may be leased, as was done here, instead of purchased by the contractor does not change the character of the item as one forming a part of the equipment necessary for the performance of the contract. If the scaffolds had been purchased by the contractor, the bond would not cover the purchase price in the event of failure to pay, because it is undisputed that they would form a part of the contractor's equipment with a useful life beyond that of the present job. *Kline v. McMeekin Const. Co., supra.* There can be no difference insofar as the coverage of the bond in question is concerned between an obligation of the contractor to pay the purchase price of the scaffolds and an obligation to pay for their conversion while leased from another.

Public contracts require the contractors to furnish their own equipment. Certainly, under a bond as here involved, it is not intended that sureties be liable for the cost of a contractor's equipment, whether it be purchased in his own name or leased from another. A contractor may bring on a job a piece of equipment the cost of which far exceeds the amount of the entire contract. The cost of the particular equipment might well make it more feasible for the contractor to lease it than to purchase it. Clearly in such a situation it could not be reasonably held that the term "labor and materials," as used in the bond, covered the value of an item of equipment leased by the contractor which normally would form a part of his permanent plant necessary for the performance of the job.

The facts here show that the scaffold equipment was leased for use only on the Greenville Memorial Auditorium job and that it was to be returned at the expiration of the lease to Respondent. It is undisputed that the scaffolds were reasonably required for use in the construction of the auditorium and that the bond covers charges for the rental of such equipment. The Respondent contends that these facts warrant the inclusion of the loss of the rental equipment within the coverage afforded by the contractor's bond. The fact that the scaffolds were to be used only on the project covered by the bond did not change their character as a part of the permanent equipment which the contractor was required to furnish. Their use only on the auditorium job was determined by the lease agreement and not by the character, nature or permanence of the equipment.

In *Kline v. McMeekin Const. Co., supra,* this Court held that a claim for major repairs to permanent equipment of the contractor was not included within the coverage of contractor's bond. While that decision involves somewhat different facts, we think the underlying principles upon which that case was decided control the decision here.

For the foregoing reasons, we are of opinion that the judgment appealed from should be affirmed as to James

Stewart and Company, Inc., and reversed as to United States Casualty Company to the extent of liability for loss of equipment; and it is so ordered. Affirmed in part; reversed in part.

OXNER, LEGGE and MOSS, JJ., concur.