**PUBLIC WATER SUPPLY DISTRICT NO. 3 OF RAY COUNTY, Missouri, ex rel., the VICTOR L. PHILLIPS CO., INC., Respondent,**

v.

**RELIANCE INSURANCE COMPANY, Appellant.**

**No. WD 36977.**

Missouri Court of Appeals, Western District.

Feb. 4, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied March 27, 1986.

Application to Transfer Denied May 13, 1986.

Robert M. Hill, Richmond, for appellant.

Linda S. Dickens, Kansas City, for respondent.

Before CLARK, C.J., Presiding, and SHANGLER and KENNEDY, JJ.

KENNEDY, Judge.

Reliance Insurance Company appeals from a summary judgment in the amount of $16,997.34 together with pre-judgment interest, entered in favor of plaintiff, the Victor L. Phillips Company, Inc., upon a contractor's bond upon which defendant Reliance was surety. The claim of plaintiff was based upon the alleged rental of certain construction equipment by plaintiff to a subcontractor, Fred McClure, d/b/a McClure Construction Company, which plaintiff claimed was covered by the construction bond.

Reliance claims first that the rental of construction equipment is not covered by the contractor's bond.

It claims second that even if such rentals are included in the bond's coverage, the equipment in question was not furnished

by plaintiff to McClure under a true rental agreement, but that the machine was actually sold to McClure and the lease represented a security interest retained by the plaintiff.

The facts are as follows:

The construction project was the construction of a water distribution system in Ray County, Missouri. The owner was Public Water Supply District No. 3 of Ray County. The general contractor was Vencil Sapp, d/b/a Sapp Excavating Company. Contractor Sapp furnished the bond required by § 107.170, RSMo 1978, with defendant Reliance Insurance Company as surety. The bond employs substantially the language of the statute.[1] It is conditioned upon the payment of "all just claims for work or labor performed and materials furnished in connection with said Agreement, including all amounts due for ... equipment and tools, consumed or used in connection with the construction of such work ..."

The contractor Sapp subcontracted at least some of the trenching to Fred McClure, d/b/a McClure Construction Company. McClure entered into an arrangement to secure from plaintiff a certain used Model 35 Drott Excavator. An "Order Blank" was dated January 24, 1980. It is signed by McClure as "Buyer" and by a representative of the plaintiff as "Seller". It is a standard printed form of contract for the sale and purchase of the machine, with blanks completed in longhand. It shows a purchase price of $29,500 and sales tax of $1,364.30, for a total of $30,864.30. Written on the blank are the words "Rental—2,500 per month", then in a space for "Terms, Conditions and Agreements" are written the words: "5-months rental & guaranteed to convert to purchase at end of 5-month rental. Customer will get own financing." The form refers to further "Terms, Conditions and Agreements" on the back of the form, but we have only a photocopy of the front thereof and do not know what was printed on the back.

A second document was executed by the parties on February 7, 1980. This described McClure as "Lessee" and plaintiff as "Lessor". Blanks on this printed form were filled in by typewriter. Typed in are the words "5 Mo. Rental Purchase" and in a space for "Total Value" is typed "$29,500.00". It calls for payment by lessee of 3% for Rental Insurance. This document too refers to "Terms and Conditions on the Reverse Side", but the reverse side has not been furnished to us.

On the February 7, 1980 lease agreement, as we shall call it, there is a notation that the machine was shipped on March 14, 1980. Apparently this date started the rental charges. Month-to-month invoices from plaintiff to McClure run from the 14th of the month to the 14th of the following month. Each such invoice calls for the payment of $2,500, plus 3% rental insurance ($75) and "MST" (Missouri sales tax, presumably) of $115.63. The total of the four invoices is $10,762.52. The first invoice also adds $267.50 delivery charges. The balance of the judgment amount is made up by repairs to the machine, a charge for return freight, a "service charge", and by rental of two other pieces of equipment (of which there was evidence of payment), less a $1,000 payment credit.

I

■ We hold that the rental of construction equipment is an item included in the coverage of the bond required by § 107.-

---

1. In statute-required bonds, the terms of the statute are incorporated in the bond as a matter of law, if the bond is narrower than the statute, *State ex rel. Winebrenner v. Detroit Fidelity & Surety Co.*, 326 Mo. 684, 32 S.W.2d 572, 573 (1930); *Fogarty v. Davis*, 305 Mo. 288, 264 S.W. 879, 880 (1924)—although the bond may provide broader coverage than the statute and the terms thereof are enforceable. *Reorganized*

*School District R–3 v. L.D. Compton Construction Co.*, 483 S.W.2d 674 (Mo.App.1972); *Audrain County ex rel. First National Bank v. Walker*, 236 Mo.App. 627, 155 S.W.2d 251, 255 (1941). The application of neither of these principles presents any issue in the case before us because the language of the bond tracks that of the statute insofar as it relates to the coverage of equipment rental charges.

170, RSMo 1978. We have no Missouri case so holding, but cases decided under the corresponding Federal statute, 40 U.S. C.A. § 270a, known as the Miller Act, uniformly so hold. *Illinois Surety Co. v. John Davis Co.*, 244 U.S. 376, 383, 37 S.Ct. 614, 617, 61 L.Ed. 1206 (1917); *Roane v. United States Fidelity & Guaranty Co.*, 378 F.2d 40, 43 (10th Cir.1967); *United States ex rel. Llewellyn Machinery Corp. v. National Surety Corp.*, 268 F.2d 610, 611 (5th Cir.1959), *cert. denied*, 361 U.S. 914, 80 S.Ct. 259, 4 L.Ed.2d 184 (1959). Cases decided under that statute are persuasive in cases arising under the Missouri statute cited above, § 107.170. *School District of Springfield R–12 ex rel. Midland Paving Co. v. Transamerica Insurance Co.*, 633 S.W.2d 238, 248 (Mo.App.1982). Both statutes indicate a legislative intent to afford broad protection for those who contribute to the improvement and enhancement of the property of others, and the statute is to be liberally construed to accomplish that end. *Illinois v. Davis*, 244 U.S. at 380, 37 S.Ct. at 616; *United States ex rel. Material Service Co. v. Wolfson*, 362 F.Supp. 454 (E.D.Mo.1973); *United States ex rel. J.P. Byrne Co. v. Fire Association*, 260 F.2d 541 (2d Cir.1958); *Camdenton Consolidated School District No. 6 ex rel. W.H. Powell Lumber Co. v. New York Casualty Co.*, 340 Mo. 1070, 1077, 104 S.W.2d 319, 322 (1937); *State ex rel. Winebrenner v. Detroit Fidelity & Surety Co.*, 326 Mo. 684, 32 S.W.2d 572 (1930). The Miller Act language which is held to embrace equipment rental is "labor and material in the prosecution of the work provided for in said contract". The corresponding language in § 107.170 is "equipment ..., consumed or used in connection with the construction of such work". The rationale of those cases which hold that Miller Act bonds cover equipment rentals (as well as cases interpreting state statutes requiring contractors bonds on public works projects to which we will advert later) is that the rental payments, as opposed to the equipment itself as a capital item, are wholly consumed or used in the construction project. Rental payments simply represent an increment of the useful life of the rented equipment, and it is perfectly logical to say that these increments are "equipment ... consumed or used in connection with the construction of such work".

A majority of state courts, interpreting variously worded statutes (but, like § 107.-170, not covering rental of equipment in explicit terms), have held also that rental of construction equipment is included in the general language. One such case, *Miller v. American Bonding Co.*, 133 Minn. 336, 158 N.W. 432 (1916), says:

> Where the work is of such character that the use of extensive and costly machines are (sic) required, it is reasonable to consider that the wear and tear of these machines is a necessary contribution to the work, or, in other words, the reasonable value of the use of the machines contributes as much to the construction in hand as does the reasonable value of the manual labor expended thereon.... A proper interpretation of the statute, in the light of its history, its present wording, and a reasonable consideration for its purpose, is that ... for reasonable value or agreed price of the use of any tools or machinery furnished for and necessary in the construction, there is liability on the bond.

*Id.* 158 N.W. at 433–34. *See also*, to similar effect, *Arizona Gunite Builders, Inc. v. Continental Casualty Co.*, 105 Ariz. 99, 459 P.2d 724, 726 (1969); *McElhose v. Universal Surety Co.*, 182 Neb. 847, 158 N.W.2d 228, 233 (1968); *United States Fidelity & Guaranty Co. v. Feenaughty Machinery Co.*, 197 Wash. 569, 85 P.2d 1085, 1090 (1939).

Reliance cites us to the Missouri case of *State ex rel. Potts v. Davis*, 24 S.W.2d 1047 (Mo.App.1930), which held that equipment rentals were not covered by the statutory language of what is now § 107.170. That case was decided under an earlier form of the statute. The statute was later amended to include "equipment" as a covered item, and *Davis* is not authoritative on the

point before us under the present form of the statute.

## II

■ When we have decided that equipment rental is within the coverage of the statutory bond, we are still not through with our case. Reliance argues that the contract between plaintiff and McClure by which the excavating machine was furnished to McClure was not a rental agreement, but rather was a sale-purchase agreement. The $2,500 monthly payments were not true rental, it says, but were purchase price installments. It says the lease arrangement was the retention by plaintiff of a security interest in the machine. Section 400.9–102(2), RSMo 1978. If Reliance is correct on this point, then the monthly payments claimed by the plaintiff were installments on the purchase price of the machine, were not true rental, and were not covered by the bond. *United States ex rel. Eddies Sales and Leasing, Inc. v. Federal Insurance Co.*, 634 F.2d 1050 (10th Cir.1980); *United Pacific Insurance Co. v. United States ex rel. Mississippi Valley Equipment Co.*, 296 F.2d 160 (8th Cir.1961).

We hold that the question whether the payments were true rental payments and so covered by the bond, or whether they were payments on the purchase price and therefore not covered by the bond, remained a "genuine issue of material fact". Supreme Court Rule 74.04(c). There is not before us, as there was not before the trial court, sufficient facts to place the transaction between plaintiff and McClure with reference to the excavating machine undebatably in the lease category or in the purchase category. The court erred in granting summary judgment for the plaintiff. The case must be remanded for resolution of that question upon evidence.

Without attempting any definitive statement of the characteristics that distinguish the one type of transaction from the other, we point out the language of § 400.1–201(37), RSMo 1978, which says:

Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

Some of the relevant factors indicating a true lease are listed in White & Summers, *Uniform Commercial Code* (2d ed. 1980), at page 879, as follows:

A. Provision specifying purchase option price which is approximately the market value at the time of the exercise of the option.

B. Rental charges indicating an intention to compensate lessor for loss of value over the term of the lease due to aging, wear and obsolescence.

C. Rentals which are not excessive and option purchase price which is not too low.

D. Facts showing that the lessee is acquiring no equity in leased articles during the term of lease.

*See also In re Marhoefer Packing Co., Inc.*, 674 F.2d 1139 (7th Cir.1982); *Percival Construction Co. v. Miller & Miller Auctioneers, Inc.*, 532 F.2d 166 (10th Cir.1976).

The trial court had no evidence before it of whether the $2,500 per month was within the range of the reasonable rental value of the equipment, no evidence of the market value of the machine after five months' use, and no other evidence which would clearly stamp this transaction as a true lease. The written contract, or contracts, are not without ambiguity. In the first memorial to their agreement, the January 24 "Order Blank", it was stated: "5-months rental & guaranteed to convert to purchase at end of 5-month rental." Reliance says that this was a definite agreement on the part of McClure to purchase the machine—that the language means that McClure was "guaranteeing" to buy

the property at the end of the five-month period. Plaintiff says, on the other hand, that the meaning was that plaintiff was "guaranteeing" to give credit for the five months' rental if McClure exercised his option to buy. The upshot of the entire matter is this: that the trial judge could not say, and we cannot say, as a matter of law, that the contract between plaintiff and McClure was a true lease contract, and that the monthly payments were true rental charges.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

All concur.