**FINCH EQUIPMENT CORPORATION,
d/b/a Finch Equipment
Company, Appellee,**

v.

**Robert FRIEDEN, d/b/a Frieden Construction Company, and Commercial Contractors of Nebraska, Inc., and Industrial Indemnity Company, Appellants.**

No. 89-2035.

United States Court of Appeals,
Eighth Circuit.

Submitted March 13, 1990.

Decided April 17, 1990.

David M. Geier, Lincoln, Neb., for appellants.

Thomas D. Munro, North Kansas City, Mo., for appellee.

Before JOHN R. GIBSON, Circuit Judge, BRIGHT, Senior Circuit Judge and MAGILL, Circuit Judge.

BRIGHT, Senior Circuit Judge.

In this diversity action, prime contractors Robert Frieden, d/b/a Frieden Construction Company (Frieden) and Commercial Contractors of Nebraska, Inc. (Commercial) and their surety, Industrial Indemnity Company (Indemnity), appeal the $39,-552.87 judgment entered in favor of plaintiff Finch Equipment Company (Finch) under the Missouri Public Works Bond Statute, Mo.Rev.Stat. § 107.170 (1986). Appellants contend that the Missouri Public Works Bond Statute does not impose liability on prime contractors or their surety for repairs made to a subcontractor's capital

equipment utilized in a bonded public works construction project. We affirm.

## I. BACKGROUND

In a 1984 joint venture, Frieden and Commercial entered into a contract with the state of Missouri to perform a major highway construction project. As part of the contract, Frieden and Commercial, as principals, and Indemnity, as surety, provided the state with a contractor's bond to insure contract performance and payment of costs. It is undisputed that the Missouri Public Works Bond Statute requires contractors' bonds for such projects.

Three weeks later, Frieden and Commercial subcontracted a substantial portion of the work on the project to Grassridge Industries (Grassridge). In anticipation of this work, which was expected to take a year and a half, Grassridge acquired a link belt crane from Finch Equipment Company by an agreement dated March 13, 1985. The March 13 agreement called for monthly payments of $2,200 over a minimum five-year period, but included an option to purchase exercisable within three years. In addition, the agreement imposed responsibility on Grassridge for all upkeep and maintenance and permitted Finch to demand return of the equipment upon violation of the agreement provisions. Although Finch and Grassridge termed this agreement a lease, the district court concluded that the agreement constituted a contract for the purchase of capital equipment.[1] Finch does not contest this ruling on appeal.

Several months after commencing work in March 1985, Grassridge experienced financial difficulties and became unable to maintain the crane or make payments owed under the March 13 agreement. Thereafter, to keep the crane on the job, Frieden and Commercial assumed certain installment payments and paid for a bare mini-mum of essential repairs. Both sides agree that the crane was essential to the project. The district court additionally found that, during this period, Grassridge subjected the crane to heavy, but predictable, use.

By August 1986, the project completion date, the crane had become inoperable from numerous broken or worn-out parts during its eighteen months of intensive use. In addition, Grassridge owed $17,600 in outstanding installment payments. Finch eventually sold the crane for $40,000, after spending $1,882 to transport the crane to a repair shop and making roughly $6,000 of an estimated $32,144.87 in necessary repairs. The parties stipulated that the crane had a value of $79,000 when Finch delivered it to Grassridge in March 1985.

Finch was unable to recover his losses from Grassridge, then insolvent, and consequently sued Frieden, Commercial and Indemnity under the contractor's bond for some $51,626.87 in alleged damages for Grassridge's breach of the March 13 agreement. After a bench trial, the district court denied recovery for the $17,600 in outstanding installment payments based on *Public Water Supply District No. 3 of Ray County ex rel. Victor L. Phillips Co. v. Reliance Insurance Co.*, 708 S.W.2d 190, 193 (Mo.Ct.App.1986) [hereinafter *Public Water Supply*], which expressly excluded capital equipment purchases from coverage under the Missouri Public Works Bond Statute. The district court nevertheless granted judgment for Finch with respect to the $34,026.87 in repairs and incidental transportation costs.[2] Appellants' appeal followed. For the reasons discussed below, we affirm.

## II. DISCUSSION

■ Appellants dispute their liability for the repairs to Finch's crane under the Missouri Public Works Bond Statute. Specifi-

---

1. In so ruling, the district court reasoned that the agreement had been structured to make exercise of the purchase option the only reasonable choice.

2. Finch also sued appellants for $5,526 in back lease payments and repair costs for a separate crane leased by Grassridge under an agreement dated March 6, 1985. While appellants originally contested this amount in their appeal, their attorney on oral argument conceded the propriety of this award. Accordingly, we need not discuss the March 6 lease claim.

cally, appellants argue that section 107.-170(1) of that statute does not contemplate repairs to capital equipment that a subcontractor acquires by a purchase-option agreement for use on a bonded project. We disagree.

■ At the outset, we observe that this court gives deference to the district court's interpretation of state law. *Cowens v. Siemens–Elema AB,* 837 F.2d 817, 823 (8th Cir.1988). In this case, the district court interpreted section 107.170(1) to encompass the equipment repair costs (including transportation) presented here. The district court based its interpretation on the express language of section 107.170(1), which requires bond coverage for "repairs on machinery ... consumed or used in connection with the construction of [public works]...." [3] In particular, the district court reasoned that "[s]ince machinery is not necessarily 'consumed' on a given project, repairs appear to be authorized under the statute for machinery which is simply 'used' in the construction." Accordingly, the district court granted judgment for Finch based on the undisputed evidence of the crane's substantial, necessary and exclusive use for the appellants' construction project.

We agree with the district court's ruling for a number of reasons. First, the plain language of section 107.170(1) appears to encompass the equipment repair costs presented here. We also deem it noteworthy that the Missouri legislature expressly amended the Public Works Bond Statute (then section 2890) to include the cost of equipment repairs. Act approved April 4, 1933, ch. 15, 1933 Mo.Laws 179–80. Prior to that time, equipment repairs fell outside the scope of the statute. *State ex rel. Hernleben v. Detroit Fidelity & Sur. Co.,* 21 S.W.2d 494, 495–96 (Mo.Ct.App.1929).

Furthermore, Missouri courts have repeatedly opined that section 107.170 should be interpreted broadly to effect its statutory purposes. *Public Water Supply,* 708 S.W.2d at 192. The Missouri legislature enacted the Public Works Bond Statute to facilitate the construction of public work, *State ex rel. Fager & Friesen Ins. Agency v. Storms–Green Constr. Co.,* 382 S.W.2d 812, 818 (Mo.Ct.App.1964), to protect those who furnish labor and materials for public sector projects, *First State Bank v. Reorganized School Dist. R–3 of Bunker,* 495 S.W.2d 471, 483 (Mo.Ct.App.1973), and to prevent unjust enrichment of those who receive a material benefit, *see id.* at 481–82.

The above considerations support appellants' liability under the facts of this case. In particular, Grassridge acquired the crane with appellants' project specifically in mind and used the crane exclusively for that purpose. *Cf. First State Bank,* 495 S.W.2d at 478–79 (no liability under bond statute for bank loan contractor used on variety of projects). Added to this, appellants needed the crane to complete their project and benefitted from its use. *Cf. Public Water Supply,* 708 S.W.2d at 192 (bond statute protects those who contribute

---

**3.** We set out the provisions of the Missouri Public Works Bond Statute in full below:

1. It is hereby made the duty of all officials, boards, commissions, commissioners, or agents of the state, or of any county, city, town, township, school, or road district in this state, in making contracts for public works of any kind to be performed for the state, or for such county, city, town, township, school or road district, to require every contractor for such work to furnish to the state, or to such county, city, town, township, school or road district, as the case may be, a bond with good and sufficient sureties, in an amount fixed by said officials, boards, commissions, commissioners, or agents of the state, or of such county, city, town, township, school or road district, and such bond, among other conditions, shall be conditioned for the payment of any and all materials, lubricants, oil, gasoline, grain, hay, feed, coal and coke, repairs on machinery, groceries and foodstuffs, equipment and tools, consumed or used in connection with the construction of such work, and all insurance premiums, both for compensation, and for all other kinds of insurance, on said work, and for all labor performed in such work whether by subcontractor or otherwise.

2. All bonds executed and furnished under the provisions of this section shall be deemed to contain the requirements and conditions as herein set out, regardless of whether the same be set forth in said bond, or of any terms or provisions of said bond to the contrary notwithstanding.

Mo.Rev.Stat. § 107.170 (1986).

to improvement of other's property). Moreover, under the terms of the March 13 agreement, Finch could have repossessed the crane in view of Grassridge's nonperformance of at least two contract terms, *i.e.*, failure to make timely payments or to properly maintain the crane. Had Finch exercised this right, appellants and the public might have been seriously inconvenienced. *Cf. Storms–Green Constr. Co.*, 382 S.W.2d at 818–19 (bond coverage for insurance premiums justified to prevent involuntary cancellation of policy following subcontractor default).

Appellants, relying on *Public Water Supply*, nevertheless contend that their liability is foreclosed by the district court's finding that the March 13 agreement constituted a purchase of capital equipment. In *Public Water Supply*, 708 S.W.2d at 193, the Missouri Court of Appeals held that section 107.170(1) did not extend to installment payments owed by a subcontractor for capital equipment purchases. *Public Water Supply*, however, did not present the issue of a prime contractor's or surety's liability for *repairs* to capital equipment, but only whether the bond provision encompassed the purchase price.

■■■ Appellants next argue that Finch's rights should be governed by the provisions for secured transactions under Missouri's Uniform Commercial Code, Mo. Rev.Stat. §§ 400.9--101 to .9–507 (1986) (amended 1988), because the March 13 agreement actually constituted a sale with a reserved security interest, *see* Mo.Rev. Stat. § 400.1–201(37) (1986) (amended 1988). As Finch points out, however, nothing in the Missouri Uniform Commercial Code prohibited him from proceeding against appellants under the provisions set out by section 107.170 for contractors' bonds. Indeed, section 522.300 of the Missouri Revised Statutes explicitly authorizes a person furnishing materials or supplies for a public construction project to sue under the bond provisions. *State ex rel. Francesconi v. Aetna Casualty & Sur. Co.*, 350 S.W.2d 418, 419 (Mo.Ct.App.1961). Likewise, a provider need not be a subcontractor or a vendor to obtain protection of the bond. *City of St. Louis ex rel. Stone Creek Brick Co. v. Kaplan–McGowan Co.*, 233 Mo.App. 789, 108 S.W.2d 987, 990 (1937).

■■■ The appellants further contend that Finch's claim is precluded under the Miller Act, 40 U.S.C. § 270a(a)(2) (1982)—the analogous federal statute for section 107.170. Appellants, citing *Continental Casualty Co. v. Clarence L. Boyd Co.*, 140 F.2d 115, 116 (10th Cir.1944), assert that the Miller Act permits recovery only for routine and incidental machinery repairs. As the district court noted, however, the language of section 107.170 provides broader protection than the Miller Act, which requires contractors' bonds only to protect suppliers of "labor and material." Further, the Miller Act does not bind Missouri courts in their interpretation of section 107.170. *First State Bank*, 495 S.W.2d at 475–76. Moreover, at least three federal circuit courts have imposed Miller Act liability for equipment repairs where, as here, the project could reasonably be expected to cause substantial consumption of the machinery or parts at issue. *See United States ex rel. J.P. Byrne & Co. v. Fire Ass'n of Philadelphia*, 260 F.2d 541, 543–45 (2d Cir.1958); *Continental Casualty Co.*, 140 F.2d at 117; *Massachusetts Bonding & Ins. Co. v. United States ex rel. Clarkdale Mach. Co.*, 88 F.2d 388, 389–90 (5th Cir.1937).

## III. CONCLUSION

Accordingly, we affirm the district court judgment imposing liability on appellants for damages Finch sustained as a result of the use and consumption of his equipment for appellants' bonded construction project.